**LOCAL UNION NO. 971, UNITED AUTOMOBILE WORKERS, AFL–CIO, Plaintiff,**

v.

**BENDIX–WESTINGHOUSE AUTOMOTIVE AIR BRAKE CO., Defendant.**

**No. 35870.**

United States District Court
N. D. Ohio, E. D.

Oct. 11, 1960.

Rudd, Ober, Finley & Miller, Cleveland, Ohio, for plaintiff.

King E. Fauver, Fauver & Fauver, Elyria, Ohio, for defendant.

KALBFLEISCH, District Judge.

This action to set aside and vacate an arbitration award was originally filed in the Court of Common Pleas of Lorain County. It was removed here on defendant's motion pursuant to 28 U.S.C.A. § 1441, as a case in which this Court had original jurisdiction under 29 U.S.C.A. § 185, and 28 U.S.C.A. § 1337. The removal was not contested by plaintiff. Defendant filed an answer and a counterclaim asking for judgment and enforcement of the arbitration award.

The facts, as they appear from the various exhibits submitted in connection with the motion, are as follows: Plaintiff is a labor union which represents certain employees of defendant, a manu-

facturer incorporated in Delaware with principal place of business in Elyria, Ohio, and engaged in industry affecting interstate commerce. In 1959, various grievances—which had not been settled in the regular grievance procedure provided for in the collective bargaining agreement (Complaint, Ex. A) between plaintiff and defendant—were appealed by the union to the arbitration procedures established by that contract. By letter dated August 25, 1959 (Complaint, Ex. B), the parties made inquiry of Patrick J. Fisher, of Indianapolis, Indiana, an arbitrator, with respect to his fees and availability with the view of retaining him to hear the grievances then pending. In their letter, the parties enclosed a copy of their collective bargaining agreement (hereinafter referred to as Agreement) and directed Fisher's attention to paragraphs 66 through 84 thereof, which deal with the grievance and arbitration procedures. Mr. Fisher's terms being satisfactory to both parties, they agreed to select him as their arbitrator.

Fisher was unable to hear all grievances on consecutive days (Fisher Affidavit, Ex. A) but heard a number of them in Elyria on September 23 and 24, 1959, and returned to hear the remaining grievances on October 20, 21 and 22, 1959. (Complaint, unnumbered paragraphs 5 and 8; Answer, paragraph 5.)

At the conclusion of the September hearings the parties indicated to the arbitrator that they wished to exchange briefs and it was arranged that such briefs would be filed not later than October 2, 1959. Briefs were submitted by October 2, but on October 12 the arbitrator received a letter from defendant commenting on the brief previously submitted by the plaintiff. On October 20, during the final round of hearings in Elyria, plaintiff made an oral statement "in regard to the company's said letter of October 12" (Fisher Affidavit, paragraph 13). Plaintiff contends that the statement did not relate to the merits of the letter. (Supplemental Affidavit of C. Franklin Carr, paragraph 3.)

At the conclusion of the second round of hearings, on October 22, the date November 9 was set for submission of briefs. After the parties had submitted briefs by November 9, defendant wrote a letter, dated November 11, to the arbitrator commenting on plaintiff's brief. Defendant characterizes its letter as being in the nature of a supplemental brief (Answer, paragraph 13). On November 23, 1959, the International Union, with which plaintiff is affiliated, wrote a letter to defendant, commenting on defendant's letter to Fisher. The International Union sent a carbon copy of this letter to Fisher and it was received by him on November 27 (Fisher Affidavit, paragraph 16).

The parties agree that no written extensions of time were granted for the submission of briefs (Complaint, paragraph 8; Answer, paragraph 8), nor does there appear to be any contention that such extensions were granted or agreed upon orally. Neither is it suggested that there were any agreements or rules against submission of rebuttal or reply briefs.

The arbitrator made an award, dated December 23, 1959, disposing of all of the grievances which had been presented to him during the September and October hearings (Fisher Affidavit, paragraph 18). The plaintiff union received a copy of the award on December 26, 1959.

Plaintiff moves this Court for summary judgment vacating the award of the arbitrator and declaring it to be null and void, for the following reasons:

1. The award was made more than thirty days after the dates of final submission of the September and October grievance hearings, beyond which periods the arbitrator had no jurisdiction under paragraph 78 of the Agreement.

2. The letters of defendant to the arbitrator, dated October 12 and November 11, 1959, constituted supplemental briefs, and the arbitrator's failure to reject such letters,

or to communicate to the parties his treatment thereof, constituted misconduct prejudicial to the rights of the plaintiff within the meaning of Section 2711.10(C) of the Ohio Revised Code.

Defendant denies plaintiff's charges, claiming that all of the grievances heard by the arbitrator on the various dates in September and October comprised a single proceeding, that the date of final submission to the arbitrator was November 27, 1959 when he received the copy of plaintiff's letter to defendant, that the award was rendered within thirty days thereafter, and that the acceptance by the arbitrator of additional papers following the submission of the main briefs was proper, within his discretion, under paragraph 77 of the Agreement. Defendant further alleges that even if the award had been made more than thirty days after submission it is not invalid and that plaintiff waived, and is estopped from making, any objections to the award by waiting to do so until after its rendition.

Neither party questions the jurisdiction of this Court under 28 U.S.C.A. § 2201, the Declaratory Judgments Act, and under 29 U.S.C.A. § 185(a), the Labor Management Relations Act, the bases of defendant's counterclaim. Defendant contests the Court's jurisdiction under either 2711.10 of the Ohio Revised Code or 9 U.S.C.A. § 1 et seq., the United States Arbitration Act.[1]

This matter has been presented to the Court by oral argument and by extensive briefs.

The relations between the parties herein are governed by the Agreement dated January 30, 1959. The Agreement contains a no-strike clause and sets up the customary procedure for handling grievances by negotiation and, if they are not resolved at that level, by submission to an arbitrator. The following portions of the Agreement relate to such grievance procedure and to the jurisdiction and functions of an arbitrator:

"(66) The Company and the Union endorse the principle of an orderly grievance procedure and the prompt handling of grievances and to that end will work within the procedure.

"(67) Should any dispute or grievance arise between the Company and its employees regarding the meaning or application of any provision of this Agreement, or should any other dispute arise hereunder in the plant, negotiations for the settlement of such dispute or grievance shall be conducted in accordance with the procedure herein established.

"(71) Both the Company and the Union shall have the right to file grievances against the other party regarding the meaning or application of any provision of this Agreement. Such grievances shall be entered at Step 3 of the Regular Grievance Procedure.

"(74) The arbiter's fees and expenses shall be borne share and share alike and the decision of the arbiter shall be final and binding upon the parties.

"(75) The arbiter shall not change, alter or amend this Agreement or any Supplements hereto, but shall confine the decision exclusively to the interpretation of the Agreement.

"(77) The arbiter selected by the parties may, at his discretion, permit the parties to submit and exchange supplemental briefs following the hearing, but should any new evidence be contained in such briefs, in the judgment of the arbiter, the case shall be referred back to the

1. Although the Complaint has not been amended since removal to invoke this statute, plaintiff asserts on page 1 of its brief that "its motion to vacate may be properly founded upon Section 10 of the United States Arbitration Act, 9 U.S.C.A. § 10."

parties, in Step 3 of the grievance procedure, without decision.

"(78) It shall be the function of the arbiter after due investigation and weighing of evidence and within thirty (30) days after final submission of the case to make a decision in writing to the parties."

Three recent decisions of the Supreme Court, involving the Labor Management Relations Act and arbitration under collective bargaining agreements, set forth the principles applicable to this case. They are: United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 1363, 4 L.Ed.2d 1403, 1432; United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, and United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

In these cases the Court held that the policy reflected in our national labor laws (in particular by 29 U.S.C.A. §§ 173 (d) and 185) requires specific enforcement of agreements to arbitrate labor disputes. In Warrior and Gulf, the Court expressly rejected, as inapplicable to labor cases, the traditional hostility of courts toward the jurisdiction of arbitrators:

"Thus the run of arbitration cases, illustrated by Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, become irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commer-

cial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." Id., 363 U.S. at page 578, 80 S.Ct. at page 1351.

" * * * Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties; such resort is the unwanted exception. But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." Id., 363 U.S. at page 581, 80 S.Ct. at page 1352.

In the same opinion, the Court described the collective bargaining agreement as being "an effort to erect a system of industrial self-government" which "may attempt to regulate all aspects of the complicated relationship, from the most crucial to the most minute over an extended period of time." Id., 363 U.S. at page 580, 80 S.Ct. at page 1351.

Here the parties, taking advantage of the federal statutes which enable either of them to secure enforcement of agreements to resolve grievances and labor disputes by arbitration rather than by strike or work stoppage, have entered into the subject Agreement which provides within its framework all of the necessary procedures for conducting arbitration proceedings through to final decision. The necessity for such all-inclusive procedures in labor arbitration agreements was recognized by the Supreme Court in its Warrior and Gulf opinion at pages 580 and 581 of 363 U.S., at page 1352 of 80 S.Ct.:

"Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way

which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content is given to the collective bargaining agreement."

A brief analysis of the Agreement serves to show that it provides for the solution of most of the problems which may arise between the parties, including "the unforeseeable." Paragraph 78 provides that it "shall be the function of the arbiter" to make "a decision in writing to the parties" after "due investigation and weighing of evidence and within thirty (30) days after final submission of the case." The time of "final submission" of a case, then, would determine the beginning of the thirty-day period. Paragraph 77 authorizes the arbitrator "at his discretion" to permit the parties "to submit and exchange supplemental briefs following the hearing" and whether such briefs contain new evidence requiring the case to be referred back to Step 3 of the grievance procedure is a matter left to "the judgment of the arbiter." Paragraph 74 of the Agreement provides that "the decision of the arbiter shall be final and binding upon the parties."

The only matters specifically excluded from arbitration by the terms of the Agreement are those listed in paragraph 72 and pertain to "wages, working hours, production standards or health and safety."

The Supreme Court stated, in Warrior and Gulf, that all matters not specifically excluded by contract were subject to arbitration:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is

the terminal point of a disagreement." Id., 363 U.S. at page 581, 80 S.Ct. at page 1352.

The Court is of the opinion that the arbitrator was acting within the scope of his authority under the Agreement in deciding all of the matters submitted to him for arbitration, including such incidental procedural questions as whether to accept and consider proffered supplemental briefs and when the case would be deemed to be finally submitted. If a decision should be necessary as to whether paragraph 78 of the Agreement is merely directory, or renders null and void, *per se*, a ruling on a matter made more than thirty days after final submission, that, too, would be made by the arbitrator, not the courts, since it involves an interpretation of the Agreement. In the Enterprise Wheel case, supra, the Court said at page 599 of 363 U.S., at page 1362 of 80 S.Ct.:

"It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

The limited scope of judicial intervention into the grievance and arbitration procedures established by collective bargaining agreements was emphasized by the Supreme Court in the American Manufacturing Co. case, supra, 363 U.S. at page 567, 80 S.Ct. 1346:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment

and all that it connotes that was bargained for."

And in Warrior and Gulf the Court said, at page 582 of 363 U.S., at page 1353 of 80 S.Ct.:

" * * * the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or agreed to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

Here, it cannot be said with any assurance that the arbitration clauses of the Agreement are not susceptible of an interpretation which covers all of the questions raised by the complaint herein. In the event that the questions raised involve a dispute between the Company and the Union, rather than between the Company and its employees, resort may be had to paragraph 71 of the Agreement which provides for such grievances to be filed at Step 3.

Inasmuch as the plaintiff's charges of irregularities in the arbitration proceedings all are matters which themselves are subject to arbitration under the Agreement, it is not necessary to decide whether this Court would have jurisdiction under the provisions of Section 2711.10 of the Ohio Revised Code or 9 U.S.C.A. § 1 et seq.

There being no issue as to any material fact herein and plaintiff's motion for summary judgment vacating the arbitration award having been considered on its merits, said motion will be denied and the complaint dismissed.

The defendant's statement in its brief opposing the motion (pages 64-66) that, as a matter of law, it is entitled to summary judgment sustaining the validity of the award will be treated as a motion

to that effect. The Court having determined that the validity of the award, under the facts of this case, is a matter to be resolved under the grievance procedures of the Agreement, the defendant's motion will be overruled and the counterclaim dismissed.