WINNEBAGO LODGE NO. 1947 OF the INTERNATIONAL ASSOCIATION OF MACHINISTS, Complainant,

v.

KIEKHAEFER CORPORATION, a Delaware Corporation, Respondent.

No. 59–C–181.

United States District Court E. D. Wisconsin.

April 4, 1963.

612

Robert E. Gratz, Milwaukee, Wis., for plaintiff.

Herbert P. Wiedemann, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This action was commenced by Winnebago Lodge No. 1947 of the International Association of Machinists (hereinafter called the "Union") as an unfair labor practice proceeding before the Wisconsin Employment Relations Board and was thereafter removed to this court. Jurisdiction is based on § 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185(a). The alleged violation of the collective bargaining agreement between the parties is failure of Kiekhaefer Corporation (hereinafter called the "Company") to abide by an award rendered by Arbitrator Harold M. Gilden on July 2, 1959, in respect to a grievance concerning vacation pay for certain members of the Union.

The Union represents production and maintenance employees at the Fond du Lac, Wisconsin, plant of the Company. On June 16, 1956, the parties entered into an agreement covering wages, hours, and working conditions for said employees, which agreement expired on June 15, 1957. A new agreement was executed May 2, 1958, to be effective on the date of execution except as to wages which were to be effective as of April 28, 1958.

A general layoff took place at the plant on May 24, 1957. On June 2, 1957, the Company began to recall employees to work on a gradual basis. By May 31, 1958, a total of 349 employees had been recalled.

Most of the recalls occurred during the period from June 15, 1957 to May 2, 1958, during which period no collective bargaining agreement was in effect. In processing the recalls, the Company followed the procedure of the 1956 agreement.

A grievance was filed under the new agreement of May 2, 1958, on behalf of those employees who had not been recalled by June 1, 1958. It was claimed that these employees were entitled to receive vacation pay as of June 1, 1958, even though they had been on layoff during the period from May 24, 1957 to June 1, 1958.

The May 2, 1958, collective bargaining agreement has the following provisions:

"Section XII. *Vacations*

"12.0 Annual vacations shall be granted to all employees covered by this agreement as follows:

"Those in the Company's employ for a period of 3 to 6 months

prior to June 1, 1958 shall be entitled to 3 days of vacation; those employed for 6 months to 3 years prior to June 1, 1958 shall be entitled to 1 week of vacation and those employed 3 years or more prior to June 1, 1958 shall be entitled to 2 weeks of vacation.

"12.1  Each employee entitled to 3 days of vacation shall be paid 24 hours of pay at his average hourly earnings, computed on his earnings for the 13 weeks períod prior to the week in which Memorial Day falls; each employee entitled to 1 week of vacation shall be paid 40 hours of pay at his average hourly earnings, computed on his earnings for the 13 weeks period prior to the week in which Memorial Day falls; each employee entitled to 2 weeks of vacation shall be paid 80 hours of pay at his average hourly earnings, computed on his earnings for the 13 weeks period prior to the week in which Memorial Day falls."

Sixteen of the grievants on the callback list throughout the entire period from May 24, 1957 to June 1, 1958, had been employed for six months to three years prior to June 1, 1958, and thirty-nine of said grievants had been employed three years or more prior to June 1, 1958.

The arbitrator awarded vacation benefits to those of the grievants on layoff from May 24, 1957 to June 1, 1958, who had been employed six months or more prior to June 1, 1958, and whose seniority status had otherwise remained unimpaired under the agreement. The amount of vacation pay was to be computed " * * *  on the basis of the rate which the employee would have been entitled to receive had he been called back to work during 'the 13 weeks period prior to the week in which Memorial Day falls'."

Without concurring in the result, the Company does not contest the validity of the arbitrator's award insofar as it establishes eligibility for vacation benefits. The Company does challenge the validity of that portion of the award which creates a formula for the computation of vacation pay on the following alternative grounds: (1) That the establishment of the formula is beyond the arbitrator's power and authority in that it is outside the scope of the collective bargaining agreement and the issues submitted to the arbitrator, and (2) that the computation formula of the award is unenforceable since it is speculative and incapable of being made certain and definite.

By conceding the validity of the determination as to eligibility for vacation benefits, the Company necessarily accepts a construction of the collective bargaining agreement whereunder the grievants although on layoff during the year immediately preceding the time of the claimed vacation period, are employees. Further, it is accepted that eligibility for vacation benefits is based solely on continuous service prior to June 1, 1958, and that such benefits are not earned in respect to a particular current period of work. The Company has followed this construction of the agreement by its practice of paying full vacation pay to employees on layoff since May 24, 1957, regardless of the length of layoff, as long as these employees were recalled in time to have some average earnings during the thirteen week computation period in 1958.

The Company contends that paragraph 12.1 of the agreement constitutes a condition for payment, regardless of eligibility based on length of service prior to June 1, 1958, and employee status. The arbitrator rejected this contention. He construed the purpose of the computation clause of the agreement as providing a means of most closely approximating the earnings for the vacation period by reference to the immediately preceding time. The arbitrator also noted the inconsistency and inherent discrimination in paying full vacation benefits to those employees who had not worked the full preceding year but had been recalled in time for work sometime during the computation period, while denying all vacation pay to those employees who were not recalled until after termination of this period.

■ It is the conclusion of the court that it was within the scope of the submission and within the authority of the arbitrator to determine that the right to vacation pay of the grievants who were otherwise eligible for vacation benefits was not barred by their failure to work during the 1958 computation period. Principles governing suits to enforce arbitration awards under collective bargaining agreements under § 301(a) of the Labor Management Relations Act are stated in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It is there noted that the courts should refrain from reviewing the merits of an arbitration award. See also General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss and Company, Inc., 83 S.Ct. 789 (1963).

Refusal to enforce may not be based on mere disagreement with the arbitrator's construction of an agreement. The court observes in United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation,

courts have no choice but to refuse enforcement of the award."

In the instant case the arbitrator fashioned a remedy to implement a benefit for which the grievants were eligible under circumstances not foreseen by the draftsmen of the agreement—the contingency of eligibility for vacation pay but absence from work during the computation period. A contrary interpretation of the agreement calling for forfeiture of a benefit would result in inconsistency and discrimination.

The intention of the parties to the agreement that the computation period serve the purpose of providing a means of approximating current earnings is further shown by the failure to designate a specific year in which the computation period is to fall. There is no indication that it was also intended that the computation provision constitute a further condition for eligibility for receipt of vacation pay. Decisions of arbitrators on this question, which were cited to the court, are in conflict and offer no persuasive reasoning that the award in this case is beyond the authority of the arbitrator.

■ The Union contends that reference to the 1957 computation period— the period immediately preceding the layoff of the grievants which also coincides with the computation period of the contract—had been intended by the arbitrator. A plain reading of his decision does not reveal such an intention. Evidence on the trial of this case clearly shows that the " * * * rate which the employee would have been entitled to receive had he been called back to work during 'the 13 weeks period prior to the week in which Memorial Day falls' " is not susceptible of ascertainment. Because of variations in compensation of direct and indirect workers and availability of different classifications of work to which recall may have been optional, such a hypothetical rate would be based on speculation and conjecture. For this reason the portion of the award setting forth the computation of the rate of vacation pay must be set aside, and this

question must be referred back to arbitration for redetermination.

The foregoing decision sets forth the court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. It is the ruling of the court that the arbitration award, insofar as it declares the right of the grievants to receipt of vacation pay, is valid and binding on the Company; and further, that the question of computation of the amount of vacation pay to which the grievants are entitled must be determined by further arbitration.

Counsel for complainant Union is hereby directed to prepare an appropriate order in accordance with the court's decision, submitting the proposed order to counsel for the Company for approval as to form only.