MARBLE PRODUCTS COMPANY OF
GEORGIA, Appellant.

v.

LOCAL 155, UNITED STONE AND AL-
LIED PRODUCTS WORKERS OF
AMERICA, AFL–CIO, Appellee.

No. 20644.

United States Court of Appeals
Fifth Circuit.

Aug. 3, 1964.

Alexander E. Wilson, Jr., Atlanta, Ga., for appellant.

J. R. Goldthwaite, Morgan C. Stanford, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and CARSWELL, District Judge.

WISDOM, Circuit Judge.

The plaintiff Union seeks to enforce an arbitrator's award under the arbitration clause of a collective bargaining agreement. The defendant Company's principal contention is that the subject matter of the dispute was not arbitrable under the contract and, consequently, the arbitrator had no power to render the award. This issue turns on whether the refusal of certain employees to perform an assigned task, because of unsafe working conditions, constituted a violation of the no-strike clause prohibiting any "strike, work stoppage * * * or other interruption of production". The agreement makes non-arbitrable discipline based on an employee's violation of the no-strike clause. The district court upheld the arbitrator. We affirm.

I.

The facts are not in dispute. Marble Products Company produces marble products at a plant at Whitestone, Georgia. October 26, 1962, the Company foreman ordered nine employees to carry eighty 100-pound sacks of crushed rock from the Company's secondary mill to the primary mill. This order required the men to carry the sacks on their shoulders across a catwalk fourteen inches wide and a hundred and ten feet long which was thirty-eight feet above the ground. The catwalk sloped at an angle of eleven degrees. Alongside, a suspended ramp carried an unprotected moving belt for transporting the stone upward to the secondary mill. The angled catwalk ended in steep steps eight or ten feet high and six inches wide. The bottom step was missing. The catwalk contained a hole over which the men had to step, and the footing was uncertain because of rock chunks underfoot. At times, one employee would meet another employee going in the opposite direction on the narrow walk-way. When, on October 26, 1962, the foreman ordered the men to carry the marble down the walk, they told the foreman that they thought this work was too hard and unsafe. They said that it could be done equally well by bringing the chunks of stone down the overthrow conveyor belt or by using a tumbler (both methods had been used in the past), and that they were willing to do this work during their lunch hour. The foreman insisted that it be done immediately as he had directed; the alternative methods had proved unsatisfactory. Mosley, Vice-President of the Company, reaffirmed the foreman's orders. He made the point that the men had used the catwalk many times in the past and that no one had ever been hurt. When the workers persisted in refusing to do the task, Mosley read to the men Section 13 of the labor contract relating to strikes, work stoppages, or interruptions of work. The men indicated that they did not want to perform the dangerous task of carrying heavy sacks of marble on the catwalk. Forced to a decision, Mosley ordered the nine objectors to check out and receive their pay. Two other workers, sympathizers, left with the discharged men.

In recent contract negotiations Union representatives had never mentioned to the Company the alleged danger in the use of the catwalk. In fact, no complaints had been made before October 26, 1962, the day of the incident.

In due course the Union initiated grievance proceedings requesting that the Company reinstate the eleven employees with back pay [1] and, upon exhausting the grievance procedure, invoked arbitration in accordance with Section 13 of the col-

1. The collective bargaining agreement provides:
    "If an employee be discharged, and after investigation it is found that said employee has been dealt with unfairly, he shall be restored to his former job with seniority unimpaired and paid for lost time. * * * "

lective bargaining agreement. The arbitrator found that the conduct of the eleven employees did not constitute a "strike, work stoppage * * * or interruption of production," and that therefore the Company's disciplinary action was arbitrable. He held, however, that the discharged employees were guilty of insubordination, even though they had "a reasonable basis for declaring the catwalk unsafe". He ordered the Company to reinstate the workers with the forfeiture of one month's wages. To enforce specific performance of the award the Union brought this suit under 29 U.S.C.A. § 185. The district court, agreeing with the arbitrator, granted summary judgment for the Union.

## II.

■ Congress and the Supreme Court have blessed the broad role of labor arbitration in maintaining industrial peace.[2] To the end that arbitration agreements be interpreted liberally and sympathetically, courts are admonished that any doubt as to the arbitrability of a dispute over the meaning of a labor contract should be resolved in favor of coverage:

"[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance *should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.*" United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. at 582–83, 80 S.Ct. at 1353, 4 L.Ed.2d 1409. (Emphasis added.)

■ Nevertheless, courts have a: proper, though limited, role in determining whether the labor contract supports. the arbitrator's jurisdiction [3] to act. As the Court said in Warrior & Gulf:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a.

2. United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. See Carey v. General Electric Co., 2 Cir. 1963, 315 F.2d 499. Accord Local Union No. 787, International Union of E. R. & M. Workers v. Collins Radio Co., 5 Cir. 1963, 317 F.2d 214; Deaton Truck Line v. Local Union 612, 5 Cir. 1962, 314 F.2d 418; Livingston v. John Wiley & Sons, Inc., 2 Cir. 1963, 313 F.2d 52; Taft Broadcasting Co. v. Radio Broadcast Technicians Local Union No. 253, 5 Cir. 1962, 298 F.2d 707; Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Co., 2 Cir.1962, 298 F.2d 644; International Association of Machinists, AFL–CIO v. Hayes Corporation, 5 Cir. 1961, 296 F.

2d 238; and Southwestern Electric Power Co. v. Local Union No. 738, International Brotherhood of Electrical Workers, AFL–CIO, 5 Cir. 1961, 293 F.2d 929.. Compare Communication Workers of America, AFL–CIO v. New York Telephone Co., 2 Cir. 1964, 327 F.2d 94, 97;. and Petroleum Workers v. American Oil Co., 7 Cir. 1963, 324 F.2d 903.

3. Accord United Steelworkers of America, AFL–CIO v. Timken Roller Bearing Co., 6 Cir. 1963, 324 F.2d 738; Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, 5 Cir. 1961, 292 F.2d 112; Textile Workers Union of America v. Cone Mills Corp., M.D.N.C.1960, 188 F.Supp. 728, aff'd per curiam, 4 Cir. 1961, 290 F.2d 921; American Brake Shoe Co. v. Local No. 149 International Union Automobile, Aircraft, Agricultural Implement Workers of America, 4 Cir. 1961,. 285 F.2d 869; Winnebago Lodge No. 1947 of the International Association of:

party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

When the action is a post-arbitration suit to enforce an award, the court's role is not over when it finds that the arbitrator has jurisdiction to act. As the Supreme Court warned in United Steelworkers v. Enterprise Corp., 1960, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d 1424:

"* * * [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

We turn therefore to the language of the contract. The collective bargaining agreement between the Union and the Company has the following arbitration clause:

"Arbitration: If at any time a controversy should arise between the Union and the Company regarding the true intent and meaning of any provision except wages, of this or any subsequent agreement or contract or a controversy as to the performance of any obligation hereinunder, which the parties are unable to dispose of by full and complete use of the grievance procedure set up by this agreement, the matter shall be arbitrated upon the written request of either party to this Agreement to the other party."

Section 13 of the agreement, crucial to this case, provides, in pertinent part, as follows:

"The Union, its officers, agents and members agree that during the life of this agreement they will not instigate, condone, sponsor, or participate in any strike, *work stoppage,* slow down, secondary boycott, or other interruption of production. Any employee engaging in such activity during the term of this agreement shall be subject to discharge or other discipline. *Discipline undertaken in accordance with the provisions of this paragraph shall not be the subject of arbitration, but the question of whether or not the employee actually engaged in such activity shall be subject to arbitration."* (Emphasis added.)

The Company contends that the language of this no-strike clause unequivocally excludes from arbitration disciplinary action based on a "work stoppage * * * or other interruption of production." Here, so the Company argues, the employees refused to perform a work assignment they had performed many times in the past. As a result, a work stoppage occurred interrupting production.

■ We observe, first, that the arbitration clause provides specifically for arbitration of any controversy "regarding the true intent and meaning of any provision" of the agreement. Unless the arbitrator's reading of the contract is so unreasonable as to be arbitrary or capricious, we should accept his reading.

The arbitrator concluded: "Under the conditions described above I cannot come to a conclusion that these men engaged in a strike, I can only find that they were discharged by the Company because they

Machinists v. Kiekhaefer Corp., E.D.Wis. 1963, 215 F.Supp. 611; and Local Union No. 971, United Automobile Workers, AFL–CIO v. Bendix-Westinghouse Automotive Air Brake Co., N.D.Ohio 1960, 188 F.Supp. 842. See Wellington, Judicial Review of the Promise to Arbitrate, 37 N.Y.U.L.Rev. 471, 477 (1962); Comment, The Emergent Federal Common Law of Labor Contracts: A Survey of the Law under Section 301, 28 U.Chi.L.Rev. 707, 732 (1961); Meltzer, The Supreme Court, Arbitrability and Collective Bargaining, 28 U.Chi.L. Rev. 464, 484 (1961); and The Supreme Court, 1959 Term, 74 Harv.L.Rev. 81, 181 (1960).

failed to obey their supervisors' instructions to perform a task that they thought of as being both unsafe and hard work." In accepting this conclusion the able district judge reasoned that the no-strike clause contemplated Union conduct, not individual conduct:

"It must be observed that the expressions 'work stoppage' and 'other interruption of production' are contained in an enumeration of activities which are usually associated with Union activities as distinguished from individual acts of the members of the Union. The doctrine of ejusdem generis, while not controlling, is to be considered in this connection.

"If the allegedly discharged employees by leaving defendant's premises were 'striking' then the merits of the controversy would not be subject to arbitration. However, this Court believes that consideration should be given to the question as to whether their conduct was individual conduct or Union conduct.

" * * * It does not appear that there was any dispute pending between the Union and the Company as to these working conditions. The instance in question came up quickly and without previous consideration. * * * It is the opinion of this Court that the controversy involves the question as to whether or not eleven men were properly, or improperly discharged and that it was subject to arbitration. * * * "

Certainly Section 13 seems to contemplate special economic motivation of a sort that usually produces and requires Union participation. There was none here. The examples of work interruption referred to in Section 13 are all examples of coercive acts designed to injure the employer. Nothing of that sort motivated the employees' action in this case.

On the contrary, they wanted to stay on the job and offered to work during their lunch hour.

The last sentence of Section 13 may be construed as meaning that the only arbitrable subject is the question of whether the employees discharged were the particular workers involved in the work stoppage. That would be a fair construction, once it were determined that there was a work stoppage. Here, that is the very question at issue.

■ The Company asks, when is an interruption of production not an "interruption of production"? We answer: when it does not partake of the nature of a strike, work stoppage, slow-down, or secondary boycott; has no Union participation, no economic motivation, and no coercive animus against an employer; is confined to a good faith refusal to do a specific assigned task regarded by the employees as dangerous and the employees are willing to perform other tasks.

The language of the no-strike clause is strongly suggestive of certain statutory language. 29 U.S.C.A. § 142(2) defines "strike" as "any strike or other concerted *stoppage of work* by employees * * * and any concerted slow-down or other concerted *interruption of operations* by employees." (Emphasis added.) At the same time, 29 U.S.C.A. § 143 provides: " * * * nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this chapter." Thus, in an analogous situation Congress reached the same conclusion as the arbitrator did in this case.

We do not question the arbitrator's finding that the dischargees were insubordinate. Nor do we question the propriety of his assessing as the proper penalty forfeiture of a month's pay.[4]

---

4. Section 13 of the collective bargaining agreement provides:
  "The Impartial Umpire shall have the power to decide whether or not a par-
ticular finding shall have a retroactive effect provided, however, that no retroactivity shall predate the Union's demands for arbitration."

See Kansas City Luggage & Novelty Workers Union, Local 66 v. Neevel Luggage Mfg. Co., Inc., 8 Cir. 1964, 325 F.2d 992; cf. Teamsters, Local 784 v. Ulry-Talbert Co., 8 Cir. 1964, 330 F.2d 562.

The judgment is affirmed.