**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT 776, Plaintiff-Appellee Cross Appellant,**

v.

**TEXAS STEEL COMPANY, Defendant-Appellant Cross Appellee.**

**No. 74–4083.**

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1976.

Michael D. Schattman, Harold E. Mueller, Ft. Worth, Tex., for defendant-appellant cross appellee.

James L. Hicks, Jr., Dallas, Tex., for plaintiff-appellee cross appellant.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Following Texas Steel Company's (hereinafter Company) refusal to abide by the decision of an arbitration panel, District 776 of the I.A.M. (hereinafter Union) instituted this action in the court below seeking en-

forcement of the award.[1] The district court granted summary judgment for the Union based on the pleadings and exhibits. It also directed that each party pay its own costs and attorneys' fees. The Company appeals from the order granting summary judgment and the Union cross-appeals from the failure of the district court to award it costs and attorneys' fees. We affirm with respect to the main appeal and vacate and remand with respect to the cross-appeal.

## I. Facts

The Company's shipping yard operation entails moving its factory output from the plant and loading the goods onto trucks. Involved in this function are two ground crews and two cranes and crane operators. Prior to 1970 each of the two crews was coordinated by a "Loadout Man 'A.'" The plant's shipping yard activity increased in volume and in the 1970–71 contract between the Company and the Union a new job classification was created in the yard.

The new position was entitled "Loadout Leadman"; the persons appointed to it were those who previously had been designated Loadout Men "A." The Leadman position was specifically designated as being non-supervisory. Apparently the duties of the leadmen were not altered a great deal from those the Loadout Men "A" previously had performed. The essence of the leadmen's job was to coordinate and ensure the smooth functioning of the shipping yard operation. The position was added primarily to obtain more workers in this growing facet of the Company's operation.

The 1971–72 labor contract between the Company and the Union provided that leadmen were to be paid "at least $.20 above highest led classification rate." Pursuant to this provision Leadman A. J. Hurry was paid $3.15, which was 20 cents per hour above what the highest paid ground crew members (now Loadout Men "A") received. The shipping yard crane operators, how-

ever, were paid $3.38 per hour under the contract. Thus, in January of 1972 A. J. Hurry filed a grievance with union officials, contending that he should be paid $3.58 per hour, rather than $3.15, because he "led" the crane operators as well as the ground crew.

## II. Prior Proceedings

Initial stages of the grievance procedure failed to result in resolution of the dispute and it proceeded to arbitration. The Company voluntarily submitted to arbitration. The arbitration panel consisted of one Company representative, one Union representative and one impartial arbiter. Concluding that it was inevitable that the leadmen "led" the crane operators as well as the ground crew members because otherwise the yard operation would not be coordinated, the panel ruled in favor of the Union. The Company representative dissented.

After the Company voiced strong objection to the award, a subsequent hearing was held. Another decision affirming the original conclusion was entered.[2] The decision recognized that the leadmen's duties did not differ a great deal from those they had previously performed as Loadout Men "A," although it was also noted that leadmen did in fact exercise more supervision in the first instance than had the Loadout Men "A." The panel summarized its findings and conclusions as follows:

[T]he record shows that the work of the shipping yard is carried on as a combined cooperative integrated effort of the men on the ground and the men in the cranes, so that when a leadman was given the function of coordinating the work of the ground crews he necessarily coordinated the work of all. A leadman could scarcely coordinate a part without coordinating the whole and the crane operators are as a matter of inescapable fact a part of the whole.

1. Jurisdiction was based on 29 U.S.C. § 185.

2. Both the original and the supplemental decisions of the arbitration panel were written by

the impartial arbitrator. There is no contention by the Company that these decisions do not represent the view of the panel majority.

The Company refused to accept the decision of the arbitration panel, despite the fact that under the collective bargaining agreement that decision was "final and binding." The Union filed this action in the court below to enforce the award. The court concluded that the grievance was arbitrable and that the award was based on the collective bargaining agreement. Summary judgment for the Union was granted on the basis of the pleadings and exhibits, but it was not awarded costs and fees. This appeal and cross-appeal ensued.

### III. *The Company's Appeal*

#### A. *Appropriateness of Summary Judgment*

■ The Company contends that summary judgment was inappropriate in this case and cites four purported "material factual issues" in support of this position. The fundamental defect in this argument is that matters in dispute characterized as "fact" issues by the Company are actually conclusions of law, not questions of fact.[3] It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate. *See Asuncion v. District Director, INS,* 427 F.2d 523, 524 (9th Cir. 1970); *Ammons v. Franklin Life Insurance Co.,* 348 F.2d 414, 416–17 (5th Cir. 1965); *Molinos De Puerto Rico, Inc. v. Sheridan Towing Co.,* 62 F.R.D. 172, 176–78 (D.P.R. 1973). When an arbitration award has been made, the only potential areas for consideration of factual questions that would preclude summary judgment concern whether the dispute actually was arbitrable, *H. K. Porter Co. v. Local 37, United Steelworkers,* 400 F.2d 691, 695–96 (4th Cir. 1968); *Local 1645, U.A.W. v. Torrington Co.,* 358 F.2d 103 (2d Cir. 1966); *Local 12799, U.M.W. v. Matthiessen & Hegeler Zinc Co.,* 291

F.Supp. 578 (N.D.W.Va.1968), and whether the award drew its "essence" from the agreement, *Marble Products Co. v. Local 155, United Stone & Allied Products Workers,* 335 F.2d 468, 471 (5th Cir. 1964); *Torrington Co. v. Local 1645, U.A.W.,* 362 F.2d 677, 679–80 & nn. 5–6 (2d Cir. 1966). This inquiry entails whether the alleged arbitrable claims are governed by the contract and its arbitration provisions and whether the arbitration panel has confined its decision, and possibly the remedy, to the interpretation and application of the collective bargaining agreement. The court must scrupulously avoid the invasion of the arbitration panel's sphere and the enticement of ruling on the "intrinsic merits" of the dispute. *International Ladies' Garment Workers Union v. Ashland Industries, Inc.,* 488 F.2d 641 (5th Cir.), *cert. denied sub nom., Alfin v. International Ladies' Garment Workers Union,* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974); *Teamsters Local 745 v. Braswell Motor Freight Lines, Inc.,* 428 F.2d 1371 (5th Cir. 1970), *cert. denied,* 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217 (1971).

■ Accordingly, the question of the propriety of summary judgment in this case turns on whether there were material issues of fact concerning the arbitrability of the dispute and the proper application of the "essence" standard. Since there were no material questions of fact concerning these issues, summary judgment was appropriate. Thus, the point of contention that we must resolve concerns whether the district court applied the correct test and reached the correct result on the legal questions of arbitrability and scope of the arbitration panel's decision. *See Marble Products Co. v. Local 155, United Stone & Allied Products Workers,* 335 F.2d 468 (5th Cir. 1964).

---

**3.** The alleged material issues of "fact" are: (1) whether a violation of the collective bargaining agreement was involved; (2) whether the Company is engaged in interstate commerce; (3) whether the collective bargaining agreement was in effect at the relevant times; and (4) whether the arbitration panel concluded that the Company had violated the agreement and, apparently, whether the panel sustained the grievance.

Arguably, numbers (2) and (3) *supra* are mixed questions of law and fact that might preclude summary judgment. However, the Company is unquestionably subject to NLRB jurisdiction, which requires the interstate nexus, and it admitted in its answer that the collective bargaining agreement was in effect from November, 1971 to November, 1972. Hence, these elements actually were and are not disputed issues.

## B. *Arbitrability*

### 1. *Standard Utilized Below*

 In holding that the instant dispute was arbitrable, the district court employed principles enunciated in the "Steelworkers' Trilogy,"[4] and concluded that since the dispute was arguably within the arbitration clause it was, in fact, arbitrable. The Company asserts that this test applies only when the employer refuses to arbitrate in the first instance, rather than in situations, such as the instant one, where the employer voluntarily proceeds to arbitration but refuses to abide by the award. However, this position is at least implicitly rejected by one of the "Steelworkers' Trilogy" itself;[5] further, this court has specifically ruled that the postulates enunciated in the Trilogy apply to suits to enforce arbitration awards as well as those to compel arbitration in the first instance. *Teamsters Local 745 v. Braswell Motor Freight Lines, Inc.,* 392 F.2d 1 (5th Cir. 1968).[6] Moreover, the *Braswell* doctrine is based on solid reasoning. A company or union should not be permitted to defeat the sound policies supporting the presumption of arbitrability by the mere procedural device of going to arbitration, but refusing to abide by the award. Accordingly, the district court did not err in applying the presumption of arbitrability in this case.

### 2. *Result Reached Below*

 The Company asserts that the dispute was not arbitrable because the Company has the sole discretion to create new job classifications. The leadman position was such a new classification, the argument goes, and therefore the panel exceeded its

power by, in effect, deciding whom the leadman led.

The short answer to this contention is that the clause empowering the Company to create new job classifications is explicitly and specifically "subject to other provisions of [the contract] and to [its] grievance procedure." There is no provision in the contract that meets the "Steelworkers' Trilogy" standard, which requires a clear and unambiguous exclusion of the dispute from the arbitration mechanism in order to defeat arbitrability. *See Communications Workers v. Southwestern Bell Tel. Co.,* 415 F.2d 35, 38–39 (5th Cir. 1969). Thus, the district court's conclusion that the instant dispute was arbitrable is not erroneous.

## C. *Essence Vel Non?*

The Company contends that the arbitration panel's decision is arbitrary and capricious in that it did not confine itself to the interpretation and application of the collective bargaining agreement. In addition, the Company contends that the decision cannot be rationally derived from that agreement. In substance, the Company's argument is based on its conclusion that the panel decision assigned to the leadmen certain duties that in its opinion the leadmen should perform, rather than the duties which the Company, in its sole and rightful discretion, assigned to the position.

 In these types of cases, however, the scope of review by courts is extremely limited. When the question of arbitrability is resolved in favor of arbitration, our only remaining function is to determine whether the award draws its "essence" from the collective bargaining agreement; we do not

---

4. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

5. The *Enterprise Wheel & Car Corp.* case involved an action for enforcement of an arbitration decision.

6. *Braswell* was modified on rehearing in minor respects not relevant for our purposes at 395 F.2d 655. The case was affirmed after remand in relevant part at 428 F.2d 1371. Certiorari was denied at 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217 (1971). It is a definitive statement in this circuit on the aspects of federal labor law with which it dealt, including the proposition for which we cite it. *See Local 25, San Antonio Newspaper Guild v. San Antonio Light Div'n,* 481 F.2d 821, 823–24 & n. 2 (5th Cir. 1973).

review the merits or the factual and legal accuracy of the arbiter's findings. *Local 540, Amalgamated Meat Cutters v. Neuhoff Bros. Packers, Inc.,* 481 F.2d 817 (5th Cir. 1973). The "essence" standard is to be interpreted expansively so as to uphold the award, rather than restrictively. *See United Steelworkers v. United States Gypsum Co.,* 492 F.2d 713, 731–32 (5th Cir.), *cert. denied,* 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974).

▪ In the instant case the collective bargaining agreement grants the arbitration panel, "full authority to decide the proper interpretation and application of any of the provisions," but denies it the power, "to add to, detract from or change," any of the provisions. As noted above, the Company's right to create new job classifications is expressly subject to the agreement's grievance provisions; the clause upon which the Union based its claim, and the arbitration panel its award, provides that the "Leadman classification shall be at least $.20 above highest led classification."

It is apparent that in concluding that the leadmen led the crane operators, the panel was merely interpreting and applying these provisions of the agreement to the realities of the loading dock operation. The Company admitted that the shipping yard work necessitated "coordination" among the entire crew, including the crane operators. The panel quite reasonably concluded that in order for the work to be coordinated the leadmen as a practical matter "led" the crane operators as well as the ground crew. Apparently, the Company would have us make a delicate differentiation between directing the work so as to coordinate it and leading a crew. Unappealing as the drawing of such an ethereal distinction might be in the first instance, certainly its mere enunciation evidences the fact that the arbitration panel did not act arbitrarily or capriciously in refusing to make it. The panel's decision is well within the standard which requires it to draw its "essence" from the contract; the district court did not err in ordering enforcement of the award.

## IV. *The Union's Cross-Appeal*

The Union contends that the Company's refusal to abide by the arbitration award was without justification and that, therefore, the Union was entitled to an award of attorneys' fees and costs. *United Steelworkers v. United States Gypsum Co., supra* Part III C. It asserts that this court is as capable as the district court of resolving the question whether a challenge to an arbitration award is without justification because the standards for judicial review in these cases are so restricted. It asserts that since the district court found it "clear" that the panel based the award on the contract and "clear" that the Union was entitled to summary judgment, it is apparent that the Company raised no colorable or valid arguments in opposition to the award. Accordingly, the Union asserts that in order to discourage frivolous refusals to abide by arbitration decisions, and to foster the clear federal labor policy favoring arbitration, this court should declare the Company's challenge in this case to be without justification and should order the award of costs and attorneys' fees.

▪ We find the Union's analysis rather compelling. Although § 301 of the Labor Management Relations Act[7] does not specifically provide for costs and attorneys' fees, it is clear that when a challenge to an arbitration panel's decision is without justification these costs are awardable. *District 50, U.M.W. v. Bowman Transportation, Inc.,* 421 F.2d 934 (5th Cir. 1970); *Local 149, U.A.W. v. American Brake Shoe Co.,* 298 F.2d 212 (4th Cir.), *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962); *Local 494, I.B.E.W. v. Artkraft, Inc.,* 375 F.Supp. 129, 132–33 (E.D.Wis.1974); *Local 4076, United Steelworkers v. United Steelworkers,* 338 F.Supp. 1154, 1164 (W.D.Pa. 1972) (Supp.Mem). However, this court's scope of review is limited to determining whether the district court abused its discre-

7. 29 U.S.C. § 185.

tion in its decision concerning costs and attorneys' fees. *Local 4, I.B.E.W. v. Radio Thirteen-Eights, Inc.,* 469 F.2d 610, 615 (8th Cir. 1972); *District 50, U.M.W. v. Bowman Transportation, Inc., supra* at 935.

■ In the present posture of this case, we are unable to find such an abuse of discretion, although we note that any justification for the Company's challenge is not apparent. The only clause that the Company purports to rely on is expressly subject to the grievance procedure, which includes "final and binding" arbitration. Beyond peradventure the panel's decision was not arbitrary or capricious.[8] Accordingly, the only real contention the Company has made throughout this case goes to the "intrinsic merits" of the dispute. As previously noted, this challenge appears devoid of merit because it does not go to the jurisdiction of the arbitration panel (arbitrability) or the validity of the award ("essence"). *Cf. Local 179, United Textile Workers v. Western Textile Products Co.,* 374 F.Supp. 633 (E.D. Mo.1974) (jurisdiction and "essence" were "sincerely questioned"; award of fees would be inappropriate).

We refuse to countenance frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions. In the case *sub judice* the district court ordered each party to bear its own costs and attorneys' fees, but made no finding on whether the Company's challenge was justified. We vacate and remand on the cross-appeal for a specific finding on this question and an award of costs and attorneys' fees by the district court if it determines that the refusal to abide by the arbitration award was without justification. *See Sheeder v. Eastern Express, Inc.,* 375 F.Supp. 655, 661 (W.D.Pa.1974) (rule stated, relevant cases cited); *Local 15253, U.M.W. v. James Julian, Inc.,* 341 F.Supp. 503, 508 (M.D.Pa.1972) (rule stated, relevant cases cited).

AFFIRMED on main appeal; VACATED and REMANDED with directions on cross-appeal.

**8.** For the reasons stated in Part III *supra.*