**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA LOCAL UNION NO. 930, Plaintiff,**

v.

**HONEYWELL INFORMATION SYSTEMS, INC., Tampa Operations, Defendant.**

**No. 78-998 Civ. T-K.**

United States District Court, M. D. Florida, Tampa Division.

Aug. 9, 1979.

Thomas J. Pilacek, Pilacek, Swindle & Egan, Orlando, Fla., for plaintiff.

Peter W. Zinober, Carlton, Fields, Ward, Emanuel, Smith & Cutler, Tampa, Fla., Marvin O. Granath and James A. Kaehler, Honeywell, Inc., Minneapolis, Minn., for defendant.

## ORDER

KRENTZMAN, District Judge.

The Court has for consideration defendant's motion to dismiss or for summary judgment and plaintiff's cross-motion for summary judgment. The Court held a hearing and heard argument of counsel on these motions on August 2, 1979.

The parties are agreed that there is no dispute as to the facts. Wanda Carol Gray was a member of plaintiff union and an employee of defendant employer from 1965 until 1977. She had a record of high absenteeism in the years from 1971 through 1977. She was discharged for excessive absenteeism, being notified through her business agent on August 18, 1977 and by letter on November 28, 1977.

At all times relevant the union and the employer were parties to a collective bargaining agreement which provided for arbitration of grievances which are not otherwise resolved. The union filed a grievance alleging that the discharge was in violation of Art. 4, Sec. G of the agreement (Art. 4, Sec. F of the current agreement).

Arbitrator Lawrence G. Kanzer heard the grievance. He rendered his decision and award on May 25, 1978, finding "The Employer did not violate Art. IV, Sec. G. of the contract, and, therefore, it properly discharged the Grievant for absenteeism on non-disciplinary reasons. The grievance is hereby denied, and the discharge affirmed."

The union then filed this action to set aside that decision and award.

Relevant portions of the agreement are as follows:

Art. 1, Sec. B

The Union recognizes the Company's right, subject to the terms of this Agreement, to hire, promote, demote, layoff, suspend, discharge, add or remove work, establish jobs or operations, establish hours and working conditions, make and enforce rules of discipline, establish work standards and take any other action not contrary to the express terms of this Agreement. Any employee improperly discharged or improperly suspended without pay shall be entitled to reimbursement up to the full amount of lost wages. During the term of this Agreement, no matters shall be subject to collective bargaining except by the mutual agreement of the Company and the Union or as required by law or this Agreement's terms.

Art. 4, Sec. G

Shop stewards shall receive a copy of all written warnings issued to employees within the stewards' respective areas of responsibility. Disciplinary action for excessive absenteeism and/or tardiness shall be in accordance with established rules posted in the plant, and shall not be based on absenteeism or tardiness which occurred more than nine (9) months prior to the date of such disciplinary action. When an employee has been excessively absent or tardy to the extent that an additional absence or tardiness would result in a third warning slip or discharge, the employee's steward shall be so advised. Each written warning issued to an employee will be removed from the employee's file nine (9) months from date of issue.

Art. 5, Sec. D

. . . Only if the arbitrator finds that the matter is arbitrable shall he/she rule on the merits of the matter. The arbitrator shall be limited to determining only whether the express terms of this Agreement have been or are being violated and providing an appropriate remedy whenever he/she finds the grievant has suffered a loss because of a violation; however, in the case of a grievance involving loss of working time or money, the arbitrator shall not award back pay for any time prior to nine (9) full working days before the specific grievance being arbitrated was filed in writing in Step 2. Decisions of the arbitrator shall be final and binding on the parties until such time as they are set aside by a court of competent jurisdiction.

The arbitrator's decision stated the issues before him as:

Did the company violate the contract when it discharged Wanda Carol Gray on November 28, 1977, and if so, what is the appropriate remedy? (The parties stipulated that if the company did not violate Art. 4, Sec. G of the contract, the company properly discharged Wanda Carol Gray for absenteeism and/or tardiness.)

The arbitrator found a material distinction between disciplinary discharges and other discharges. His decision was controlled by his application of this distinction:

This case turns on whether the grievant's discharge was disciplinary in nature or not. If disciplinary, I must determine, further, if the company violated the contract or not. If non-disciplinary, it is not within the purview of Art. IV, Sec. G, quoted above, dealing with "*Disciplinary* action for excessive absenteeism . ." (Emphasis by Arbitrator); hence by stipulation of the parties, the company properly discharge[d] the grievant for absenteeism due to illness or tardiness.

. . . . .

From 1965 through the warning slips of May 4, 1976 and May 16, 1977, [I] find the employer's action to be disciplinary. The slips actually state "disciplinary action" on them. However, since neither the letters of June 8, 1977, August 2, 1977, nor the discharge letter of November 28, 1977 refer to, or in any way, invoke the disciplinary discharge for absenteeism contemplated by Art. IV, Sec. G., (relied on by the Union and grievant) and such is unrebutted by the evidence, I find that since June 8, 1977, the employer's actions in regard to grievant's absences were purely non-disciplinary in nature and I specifically find that her discharge on November 28, 1977 was for non-disciplinary reasons, because she was to[o] ill for 12–13 years (perhaps "illness prone") for her to have any usefulness to the employer. . . .

I, therefore, find and conclude, that the sole defense of the Union and grievant, that the company violated Art. IV, Sec. G, by the company's failure to give the shop steward notice prior to the grievant's discharge, is inapplicable herein, as is the Union's legal authorities relative thereto in its brief, as said Article and Section clearly relate to disciplinary discharges, by the very language employed in that part of the contract as pointed out by me, above. The company had authority under the management rights Section

of the contract, i. e., Art. i., Sec. B, to terminate the grievant for purely non-disciplinary reasons.

The United States Supreme Court delineated the scope of a district court's review of an arbitrator's decision in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960):

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. . . .

> Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

The United States Court of Appeals for the Fifth Circuit elaborated in *Safeway Stores v. American Bakery and Confectionery Workers International Union, Local 111*, 390 F.2d 79 (1968):

> On its face the award should ordinarily reveal that it finds its source in the contract and those circumstances out of which comes the "common law of the shop." But when it reasonably satisfies these requirements we think it is not open to the court to assay the legal correctness of the reasoning pursued. Arbiters, as do Judges, can err. And the policy of the law committing awesome questions of great intricacy and difficulty to lay persons who need not be and frequently are not, even lawyers, has to reckon with the likelihood that the chance—and gravity—of error will be greater, not less, than with traditional judicial processes. We may assume, without here deciding, that if the reasoning is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling then the Court can strike down the award. But where it is not that gross the arbiter's error—even though on an issue on which the reviewing court would have arrived at a different decision does not ipso facto make the arbiter an outlaw or his erroneous action a matter outside the scope of the agreement to arbitrate, in excess of the terms of the submission or beyond his powers as an arbiter. (footnotes and internal citations omitted)

The arbitrator construed the notice requirements of Art. 4, Sec. G to apply only to disciplinary discharges. This reasoning is "passably plausible" and not "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." As the arbitrator's award stems from his construction of the collective bargaining agreement, it "draws its essence from the collective bargaining agreement."

Paraphrasing the *Safeway* decision, if such a result is unpalatable to a union or its law-trained counsel who feels he had a handsdown certainty in a law court, it must be remembered that just such a likelihood is the byproduct of a consensually adopted contract arrangement—a mechanism that can hold for, as well as against, the union. The arbitrator was chosen to be the Judge. That Judge has spoken. There it ends.

Defendant's motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED. The Clerk is directed to enter judgment accordingly.

Defendant argues that plaintiff's attempt to overturn the arbitrator's awards was "totally lacking in justification," so that defendant should be awarded attorney's fees, under the authority of *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Company*, 538 F.2d 1116 (5th Cir. 1976).

Plaintiff's memoranda in support of its motion and in opposition to defendant's motion states that the union "seeks to over-

turn the arbitrator's award made on the above-stated basis as contrary to the clear, unambiguous and unequivocal language of Article IV, § G of the collective bargaining agreement." (pages 3–4) While the Court has ruled against plaintiff, this is not a case where a party without any justification refused to abide by an arbitrator's award. Plaintiff has not acted arbitrarily, capriciously or in total disregard of prior rulings. *See*, plaintiff's memoranda and cases cited therein. Therefore, an award of attorney's fees is not appropriate. *See, Texas Steel, supra* at 1121–1122, and *Sheeder v. Eastern Express, Inc.*, 375 F.Supp. 655, 661 (W.D.Pa. 1974).

Defendant's request for attorney's fees is DENIED.