374 F.Supp. 633 (1974)
LOCAL UNION NO. 179, UNITED TEXTILE WORKERS OF AMERICA, Plaintiff,
v.
WESTERN TEXTILE PRODUCTS COMPANY, Defendant.
No. 73 C 539 (A).
United States District Court, E. D. Missouri, E. D.
March 29, 1974.
*634 Stanley R. Schuchat, and Bruce S. Feldacker, Schuchat, Cook & Werner, St. Louis, Mo., for plaintiff.
Harold A. Thomas, Jr., and James D. Eckhoff, Fordyce, Mayne, Hartman, Renard, Stribling & Boedeker, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
HARPER, District Judge.
The plaintiff, Local Union No. 179, United Textile Workers of America (hereinafter referred to as Union), filed suit asking for enforcement of an Arbitrator's award against Western Textile Products Company (hereinafter referred to as Western), in favor of Herman J. Eckerle, a member of the Union. This action arises under Section 301 of the *635 Labor Management Relations Act, as amended, 1959, 29 U.S.C. § 185, which gives this Court jurisdiction. Both parties filed motions for summary judgment, and the case is before the Court on those motions. The motions were submitted to the Court on the pleadings, including exhibits thereto, and the transcript of the evidence before the Arbitrator (Defendant's Exhibit 1).
Since the late 1920's the St. Louis Finishing Company (hereinafter referred to as Finishing) was operated in a cooperative way with Western and was managed by some of the executives of Western. They occupied adjoining properties and used a common shipping room. The employees of both Western and Finishing were represented by the same Union (plaintiff), and until the late 1960's negotiations with the Union were conducted jointly and the provisions of the two contracts were for the most part identical. The same personnel manager, employed by Western, served both companies. The provisions of the collective bargaining agreement for both companies with respect to leave of absence for Union work, relevant to this dispute, were identical over the entire period until Finishing went out of business in St. Louis in 1969 (Tr. 37, 80-81).
Throughout the entire relevant period beginning prior to 1949, employees were transferred back and forth between the two company's payrolls as business needs dictated. When transferred they always received in the company to which they transferred the same seniority date as held in the other company.
The grievant, Herman Eckerle, was hired by Western on January 6, 1927 (Tr. 7, 14). On November 25, 1949, Eckerle was transferred to Finishing as a shipping clerk (Tr. 47-49, 67-68). On July 20, 1950, while employed by Finishing, Eckerle requested an indefinite leave of absence for Union work effective July 31, 1950, pursuant to Article VI, Section 6, of the then current 1949 collective bargaining agreement, which provided:
"Any member of the Union who is authorized by the Union or any branch of the American Federation of Labor to perform Union work shall be granted a leave of absence after proper notification by him or her to the Employer, with the definite understanding between the parties hereto that no more than one employee shall be granted such leave of absence at any one time."
This identical provision appeared in the Union's contract with Western at that time and was carried forward in all subsequent agreements between the Union, Western and Finishing.
On September 1, 1969, Western purchased Finishing's machinery, equipment, land, buildings, inventory and right to use the St. Louis Finishing name. Finishing ceased to exist as a corporate entity, but Western continued the former Finishing operation with the same employees as before.
The Union had been notified of this contemplated sale in advance. On July 2, 1969, the Union entered into an agreement with Western under which Western agreed "to abide by the current (Finishing) collective bargaining agreement now in full force and effect" should it purchase Finishing (Tr. 29, 48, Pl.Ex.B). After the purchase the seniority rosters of Western and Finishing were dovetailed into one seniority list giving credit to each employee for their prior accumulated service with either employer. Employees of Finishing were given full seniority credit for their prior service with Finishing (Tr. 37-46). Western and the Union subsequently entered into a collective bargaining agreement effective from September 24, 1970, to September 24, 1973, covering all bargaining unit employees, including those previously employed by Finishing under a single contract.
Eckerle worked for the Union until June 19, 1972, when he voluntarily requested that he be removed from the Union payroll. On that same day Eckerle notified Western that he would be *636 returning to work on June 26, 1972 (Pl. Ex.A). Western refused to allow Eckerle to return on the grounds that the leave of absence provisions did not require re-employment at the end of a leave, and that there were no job openings (Tr. 11-12, 14-15, 78).
On June 27, 1972, Eckerle filed a grievance requesting that he be restored immediately to his former job as shipping clerk with all seniority rights and other fringe benefits unimpaired and that he be made whole for any loss of wages. Western denied this grievance. The matter was then routinely processed to arbitration before Professor John Leonard. A full hearing with a transcript was held by Professor Leonard. Unfortunately, Professor Leonard died before rendering a decision. Western and the Union then mutually agreed to refer the matter to Professor William P. Lockhart for a decision based upon the existing briefs, transcript and exhibits, without a rehearing.
On July 22, 1973, Professor Lockhart issued his decision and award sustaining Eckerle's grievance. Western was ordered to re-employ Eckerle in a shipping clerk position and reimburse him for all earnings lost from June 26, 1972, forward as a result of Western's refusal to re-employ him. Professor Lockhart also ruled that Eckerle's seniority date was to be October 29, 1928. In computing the earnings lost, deductions from what Eckerle would have earned had he been employed as a shipping clerk on June 26th were ordered by Professor Lockart for (1) unemployment compensation payments for the period in dispute, if any, (2) social security retirement payments for the period in dispute, and (3) earnings in other jobs in the interim, if any, since he would have received none of these had Western employed him on June 26, 1972.
Pursuant to Professor Lockhart's award, Eckerle reported for work on August 1, 1973. Western refused Eckerle's request to return, and has refused to comply with Arbitrator Lockhart's award since that time.
The Union then brought this action to compel Western to comply with the award by re-employing Eckerle with full seniority rights and by reimbursing Eckerle for all lost earnings. In addition to the enforcement of the Arbitrator's award, the Union seeks interest for the grievant Eckerle on the lost earnings from July 22, 1973, the date of the award, and reasonable attorney's fees for the prosecution of this action.
Western contends that Arbitrator Lockhart in making his decision and award (a) exceeded his power, jurisdiction and authority by ignoring the actual terms of the agreement between the parties and the evidence before him, (b) attempted to create new and additional contract terms for the parties, (c) drew the essence of his decision from areas outside the contract itself, (d) misapplied settled legal principles to justify his position, and (e) attempted to disburse his own brand of industrial justice, all of which Western contends requires the Arbitrator's decision and award to be declared invalid and vacated.
In United Steelworkers of America, AFL-CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the court said:
"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.
"The collective agreement covers the whole employment relationship. It calls into being a new common law the common law of a particular industry or of a particular plant.
"There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen nor even fifty pages. Within the sphere of collective bargaining, the institutional *637 characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words.
* * * * * *
"Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. Many of the specific practices which underlie the agreement may be unknown, except in hazy form even to the negotiators.
* * * * * *
"The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.
"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collection agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."
There is little dispute as to the applicable law. Both parties here agree that the courts do not have jurisdiction to review the merits of the underlying dispute. If the arbitrator has authority to act, his decision will not be questioned by the courts. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The only point for us to decide is whether the arbitrator had authority to grant the awards in question. The authority of an arbitrator springs from the agreements between the parties, and it is upon the terms of these agreements that the award must be based. The arbitrator is not free to "dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). However, in making the determination of whether an arbitrator has exceeded his authority the agreement must be broadly construed with all doubts being resolved in favor of his authority. Bonnot v. Congress of Independent Unions Local # 14, 331 F.2d 355 (8th Cir. 1964).
The collective bargaining agreement between Western and the Union contains a broad arbitration clause. Under Article XXII, Section 2, the Arbitration provisions are applicable to any "differences between the Company and the Union or any employee of the Company, as to wages, rates of pay, hours of work and other conditions of employment, or as to the meaning, interpretation or performance of the provisions of this Agreement * * *."
Article XXII, Section 5(f) provides that:
"It is mutually understood and agreed that the decision of the impartial arbitrator shall be final and binding upon both parties."
Article XXII, Section 7(b) provides that:
"In any case not involving a discharge the impartial arbitrator may authorize the payment of money, reinstatement without loss of seniority and the restitution of all fringe benefits."
The Supreme Court in United Steelworkers v. Enterprise Wheel and Car Corp., supra, l. c. 599, said:
"The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was *638 bargained for; and so far as the arbitrator's decision concerns construction of the contract, the Courts have no business overruling him because their interpretation of the contract is different from his."
The Arbitrator's award in this case involves a dispute as to the interpretation and application of Article XVII of the collective bargaining agreement between the parties pertaining to leave of absence for Union work. The dispute between the parties was thus one subject to final and binding arbitration between the parties under the grievance procedures of Article XXII.
In reaching the conclusion that Eckerle was entitled to reinstatement at Western, the Arbitrator decided three underlying issues of contract interpretation. First, the Arbitrator decided that the provision for a Union leave of absence preserved the seniority of an employee on a Union leave, and obligated Western to restore such an employee to active employment upon his request in accordance with his seniority. The Arbitrator rejected Western's argument that the right of an employee to return was at Western's discretion and that the leave of absence provision did not require re-employment (Arbitrator's Decision Part 1 a, pp. 7-10). Second, the Arbitrator concluded that Eckerle's leave of absence and right to re-employment was for an indefinite period and still remained in effect up to the time that Finishing ceased operations. (Arbitrator's Decision Part 1 b, pp. 10-16). Third, the Arbitrator concluded that Western was obligated under its contract with the Union to restore Eckerle to reemployment although his leave of absence had technically been granted by Finishing. The Arbitrator concluded that Finishing's continuing obligation to restore Eckerle to work upon demand under Finishing's contract with the Union became the obligation of Western when Western bought Finishing's assets and signed the agreement of July 2, 1969, with the Union to "abide by the current collective bargaining agreement" between Finishing and the Union. The Arbitrator reasoned that Eckerle became an employee of Western on a leave of absence by virtue of the agreement of July 2, 1969; and had the same rights to reinstatement with Western as he had previously had with Finishing. These rights were then carried over under the identical leave of absence provision (Article XVII) of the collective bargaining agreement of September 24, 1970-73 covering both the Western and former Finishing employees, which was in effect at the time Eckerle requested reinstatement. (Arbitrator's Decision Part 2, pp. 16-18).
Accordingly, this Court finds that the Arbitrator's award did draw its essence from the collective bargaining agreement and should be enforced.
The only issues remaining relate to the Union's request for an award of interest to Eckerle at six percent on the amount owed to him under the Arbitrator's award from July 22, 1973, the date of the Arbitrator's decision and the Union's request for allowance of reasonable attorney's fees.
Neither the Labor Management Relations Act of 1947 nor the Arbitrator's award in this case expressly authorizes payment of interest, and the request for payment of interest is denied.
Turning to the question of attorney's fees, the Union cites United Steelworkers v. Butler Manufacturing Co., 439 F.2d 1110 (8th Cir. 1971), and International Union of District 50, United Mine Workers v. Bowman Transportation, Inc., 421 F.2d 934 (5th Cir. 1970), as authority for this Court to award it attorney's fees in this action. Both of the above mentioned cases deal with an employer's refusal to comply with an Arbitrator's award completely "without justification". In the instant case, Western did not seek to merely review the merits of the Arbitrator's decision, but sincerely questioned the validity and jurisdiction of the award. Therefore, under the particular facts of this case an award of attorney's fees would be inappropriate. *639 International Union of District 50, United Mine Workers v. Bowman Transportation, Inc., supra.
Accordingly, the Union's motion for summary judgment is sustained and Western's motion for summary judgment is denied, and it is hereby ordered that enforcement of the Arbitrator's award is granted.