**NF&M CORPORATION, a corporation, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, an unincorporated association, and United Steelworkers of America, Local Union No. 8148, an unincorporated association, Defendants.**

Civ. A. No. 74-784.

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1975.

Thomas E. Lippard, Pittsburgh, Pa., for plaintiff.

Susan H. Bitensky, Carl B. Frankel, United Steelworkers of America, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

MARSH, Chief Judge.

This is an action to set aside and vacate an arbitrator's award which, plaintiff employer contends, exceeded the arbitrator's authority under the collective

bargaining agreement signed by the parties. The matter is now before us on a motion for summary judgment filed by the defendant unions.

On March 6, 1974, the plaintiff suspended employee Mathew Catanese for gross neglect of working equipment, and on March 7, 1974, when Catanese appeared at the plant to question his suspension, he was discharged for insubordination. Defendant Local No. 8148, together with Catanese, initiated the first step of the labor contract's three-step grievance procedure on March 8, 1974, protesting *both* of these actions by the plaintiff.[1] Later that day, the defendant local union filed a written grievance (dated March 7, 1974) which read: "Mathew Catanese was suspended unjustly according to Article VII." *Article VII is the contract provision relating to discharge which allows the employer to discharge an employee for "just cause."* Plaintiff admits that this written grievance complied with all of the "second step" requirements set out in the contract, but argues that this was a written grievance only as to Catanese's suspension and that no written grievance was ever filed with respect to the discharge. The contract states that a second step written grievance is to be submitted within three working days of the conclusion of the first step procedure (Art. VI, para. 2). The contract further provides that the failure of any party to comply with the time limitations shall result in the automatic settlement of the grievance against the position of that party (Art. VI, para. 3).[2]

When no agreement was reached at a March 22nd meeting between the parties, the defendant referred three issues to arbitration: (1) validity of the suspension; (2) timeliness of the discharge grievance; and (3) validity of the discharge. Plaintiff agreed to permit issues (2) and (3) to be submitted to the arbitrator even though it contended that the discharge grievance had been settled against the defendants by reason of Article VI, paragraph 3.

On July 25, 1974, Arbitrator Harry Pollock held an evidentiary hearing at which both parties were given an opportunity to present testimony and to submit briefs. Subsequently, on August 7, 1974, the arbitrator issued the following award:

"1. The suspension was not for 'just cause'.

2. The grievance was timely.

3. The discharge was not for 'just cause'.

4. The grievant shall be reinstated with full seniority and shall be paid for all lost time, less any earnings in the interim and any unemployment compensation received."

On August 15, 1974, plaintiff filed the present action to have this court set aside and vacate the arbitrator's award.

---

1. The parties' collective bargaining agreement, effective November 1, 1973 through June 30, 1976, sets forth the grievance and arbitration procedure in Article VI, which states:

"All disputes between the parties relating to this Agreement, its meaning, application, interpretation or compliance are 'grievances' for the purposes of this Agreement and shall be settled in accordance with the following grievance and arbitration procedure."

The provision then outlines a procedure in which the grievance is first raised orally (First Step); if no agreement is reached, the aggrieved party may then file a written grievance (Second Step); finally, the matter may be appealed to an impartial arbitrator (Third Step).

2. Article VI, paragraph 3 provides in full: "The decision of the impartial arbitrator shall be final and binding on the parties and on any employees involved. Further, any mutual settlement between the authorized representatives of the Employer and Union or grievants at any step of the grievance procedure shall be final and binding on all parties, including the grievant. Similarly, the failure of any party to comply with the time limitations imposed upon him under this Article VI shall result in the automatic settlement of the grievance in issue against the position of the party so failing to comply, which settlement shall be final and binding and not subject to further discussion or appeal."

The plaintiff argues that such an award is beyond the scope of the arbitrator's authority under the contract. The employer admits that the arbitrator has clear authority to decide such issues in a grievance dispute, but claims that the arbitrator here exceeded his authority by deciding the issue of procedural arbitrability (i. e., the timeliness of the discharge grievance) contrary to the language of the contract. Defendants argue that the arbitrator acted properly within his authority under the agreement and request summary judgment be granted in their favor.

The question of what role this court should take in reviewing the award of a labor arbitrator was answered by the United States Supreme Court in United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The proper approach, said the Court, is for the courts to refuse to review the merits of an arbitrator's award since the federal policy favoring the settlement of labor disputes through arbitration would be undermined if the courts had the final say on the merits of the award. The arbitrator's award is legitimate so long as it draws its essence from the collective bargaining agreement. 363 U.S. at 596–597, 80 S.Ct. 1358, 4 L.Ed.2d 1424. This standard was examined and applied in Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3rd Cir. 1969) where the Court of Appeals concluded:

" . . . only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."

The Supreme Court has recognized that in labor disputes it is often very difficult to break down the problem into "procedural" and "substantive" aspects. In John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), the court ruled that procedural questions growing out of a dispute and bearing on its disposition are to be determined by the arbitrator because:

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . . It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other."

Plaintiff accepts the standard of limited judicial review as set out in *Enterprise, supra*, and also accepts the proposition that, according to *Wiley, supra*, the issue of timeliness of the discharge grievance was a proper subject for arbitration. Plaintiff's primary contention is that the arbitrator's decision on the timeliness issue violates the "essence of the agreement" test, thus making judicial interference proper in this case. Plaintiff supports this argument by references to the contract language in Article VI, paragraph 3, and by references to the language in the arbitrator's opinion. Specifically, plaintiff argues that there is no explicit statement in the opinion to indicate that the arbitrator found that the discharge grievance complied with the time limits in Article VI, paragraph 2, and thus, the grievance was necessarily decided against the defendant by reason of Article VI, paragraph 3.

Even if this court accepts plaintiff's argument that the arbitrator's opinion is ambiguous as to how the arbitrator reached his decision on the timeliness issue, that alone is not sufficient to move this court to vacate the

award. As the Supreme Court said in *Enterprise, supra:*

"A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award." 363 U.S. at 598, 80 S.Ct. at 1361.

Actually, the language of the arbitrator does not reflect ambiguity on his part so much as it indicates that there may have been a degree of confusion between the parties as to what was being grieved. Plaintiff denies that there was any confusion on either side as to what was being grieved and argues that since there was never a grievance filed concerning the discharge, the only matter being grieved was the suspension. Such an interpretation of the proceedings, however, is in itself confusing since it would mean that the only question before the arbitrator was whether the employee should receive back pay for the less than one day that elapsed between the time of his disputed suspension and the time of his allegedly uncontested discharge. In dealing with this dilemma, the arbitrator considered the language in Article VI, paragraph 3 concerning the loss of any grievance not filed in a timely manner and concluded:

"While the matter of time limits is one of the greatest importance, the confusion and lack of clarity here should not bar a hearing on the merits." (Arbitrator's Opinion, p. 6).

■■ Such a determination by the arbitrator does indeed draw its essence from the collective bargaining agreement. That test is met when the arbitrator's interpretation can "in any ra-

tional way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold Mfg. Co., supra,* 405 F.2d at 1128. Reading the contract as a whole, it is clear from the language throughout the agreement and from Article VI in particular that the parties intended to have their disputes settled through an arbitrator. In such a situation, it is the arbitrator's interpretation of the contract which the parties have bargained for, and the reviewing court must allow the arbitrator some flexibility in formulating a remedy appropriate to the dispute. *Enterprise, supra* at 597, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424. It cannot be said that the award is totally unsupported by the principles of contract construction or that it was made in manifest disregard of the collective bargaining agreement. Thus, there remains before this court no genuine issue of material fact and the defendants' motion for summary judgment under Rule 56, Fed.R.Civ.P. will be granted.

■ Defendants have claimed that they are also entitled to attorneys' fees and interest on the back pay award. The arbitrator did not include interest in his award of back pay to the grievant, and there is nothing in the Labor Management Relations Act (29 U.S.C. § 185) to indicate that an award of interest is appropriate in a Section 301 action involving reinstatement such as this. Local Union No. 179, United Textile Workers of America v. Western Textile Products Co., 374 F.Supp. 633, 638 (E.D.Mo.1974). It should also be noted that at least three times since this action was filed the defendants have moved this court for delays or extensions of time.[3] The defendants' request for interest will be denied.

3. This action was filed by the plaintiff eight days after the arbitrator issued his award. On August 29th, defendants moved for an extension of time to file an answer. On September 12th, defendants moved to postpone the preliminary pretrial conference.

As to the claim for attorneys' fees, the question of when an award of attorneys' fees is appropriate was examined by the Supreme Court in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 34 L.Ed. 2d 662 (1973). In that opinion, Justice Brennan noted that the traditional American rule disfavors the allowance of attorneys' fees, but he did discuss two established exceptions: (1) the award of attorneys' fees to the successful plaintiff where the litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them; (2) the award of attorneys' fees where the successful party's opponent has acted in bad faith, wantonly or for oppressive reasons and where the underlying rationale of the fee-shifting is essentially punitive. 412 U.S. at 4–5, 93 S.Ct. 1943, 34 L.Ed.2d 662. Neither of these exceptions seems appropriate in the present case where the employer came into court promptly and in good faith to litigate its disagreement with the arbitrator's decision. Although a federal court may award attorneys' fees against a party who, without justification, refused to abide by an arbitrator's award, this is not such a case. International Union of District 50, United Mine Workers of America v. James Julian, Inc., 341 F. Supp. 503, 508 (M.D.Pa.1972). Compare Local 4076, United Steelworkers of America v. United Steelworkers of America AFL–CIO, 338 F.Supp. 1154 (W.D.Pa.1972). Accordingly, defendants' claim for attorneys' fees will be denied.

An appropriate order will be entered enforcing the arbitrator's award.

On December 18th, defendants moved to postpone submission of pretrial procedure materials. Plaintiff consented to each of these motions. At the conciliation confer-ence on November 11, 1974, defendants indicated they planned to file a motion for summary judgment. That motion was ultimately filed on January 14, 1975.