**John E. DIERINGER, Plaintiff,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a Wisconsin corporation, Defendant.**

**No. 63-C-91.**

United States District Court
E. D. Wisconsin.

Jan. 15, 1968.

William S. Porter, Milwaukee, Wis., for plaintiff.

Rodger S. Trump, Milwaukee, Wis., for defendant.

## OPINION

REYNOLDS, Judge:

### I. Issues

Before this court are the two issues remaining in this case that could not be resolved by agreement. They are:

1. Whether the plaintiff, a railroad employee, should receive interest on the back pay he has been awarded (and, if so, how that interest should be computed); and

2. What is the "reasonable attorney's fee" that under 45 U.S.C. § 153, First (p), must be "taxed and collected as a part of the costs of the suit" if, as here, the "petitioner [plaintiff] shall finally prevail" in a suit to enforce an order of the Railroad Adjustment Board.

### II. Facts

The plaintiff in this case, John E. Dieringer, was discharged from employment by the Railroad. Disputing the propriety of his discharge, he brought an action before the Railroad Adjustment Board pursuant to the provisions of 45 U.S.C. § 153. The Board found that plaintiff was improperly discharged, that he should be reinstated, and that he was entitled to be paid his wages for the period he would have worked between discharge and reinstatement. The Board's order to this effect became final

on May 1, 1961, but plaintiff received no back pay from the company until April 15, 1963, when he received a portion of the amount due him.

On April 16, 1963, he brought an action before this court to enforce the Board's order. It has been agreed that plaintiff must be paid an amount in excess of $12,000 for lost wages, $477 for lost overtime pay, and interest from May 1, 1961, on the $477. The remaining questions are the amount of interest, if any, plaintiff should receive on the amount owing to him as lost regular-time pay, and the amount of attorney's fees that should be taxed to defendant as costs. These two questions will be dealt with in turn.

### III.  Question of Interest

█ Neither the Act nor the order of the Board in this case expressly authorizes payment of interest. However, since 1962 the National Labor Relations Board has granted prejudgment interest at the rate of 6 per cent on back pay awards, and its authority to do so has been upheld. E. g. Philip Carey Mfg. Co., Miami Cabinet Div. v. N.L.R.B., 331 F.2d 720 (6th Cir. 1964), cert. denied International Union, United Auto, Aerospace and Agr. Implement Workers of America, etc., v. Philip Carey Mfg. Co., etc., 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92. The N.L.R.B. policy would seem to be sound, and the same considerations would seem to apply to a back pay award by the Railroad Board. In Raabe v. Florida East Coast Railway Co., 259 F.Supp. 351 (M.D.Fla.1966), the court commented on Court of Appeals' decisions sanctioning the N.L.R.B.'s practice of awarding interest on back pay:

"* * * the reasoning is based on the proposition that the granting of such interest in this type of case is in conformity with general principles of law—that back pay awarded is not a fine or penalty but wages lost by the employee because of the employer's wrong; that back pay is thus in the nature of a debt and, moreover, indebtedness that arises out of a statutory obligation owed the employee by the employer. Clearly the interest is needed in order to make the employee whole. Absent any expressed policy in the R.L.A. to the contrary, and this court finds none, this reasoning applies equally to compensation awarded employees reinstated by the National Railroad Adjustment Board." Id. at 356.

In that case the court granted interest to a railroad employee on the back pay to which he was held entitled.

This case in our view is precisely in point. As in the *Raabe* case, the Board here held the plaintiff was entitled to a sum of money for back pay. It does not seem just to this court to deny to the plaintiff, and grant to the defendant, the use of what, after May 1, 1961, was plaintiff's money. Thus, following the *Raabe* case, and being directed to no case to the contrary, this court holds that plaintiff is entitled to interest on back pay from May 1, 1961, to such times as he did receive or will receive the money owed or owing to him.

If the purpose of awarding interest is "to make the employee whole," as the *Raabe* court said, i. e. to compensate him for loss resulting from his inability to use or invest sums owed to him during the period in which the debt was not paid, the period of nonpayment ought to be measured as accurately as possible. The N.L.R.B. computes the period of nonpayment on a quarterly basis, but the *Raabe* case used a less precise but more convenient annual basis. In this case, plaintiff suggests a quarterly computation, and defendant does not object. Being convinced that computation on a quarterly basis will be both reasonably accurate and not unreasonably difficult, this court is of the opinion that the interest to be awarded to the plaintiff in this case on the back pay owing to him ought to be computed on a quarterly basis. Plaintiff's attorney is requested to make the necessary computations, draft an appropriate order, secure the approval as to form of defendant's at-

torney, and submit the document to this court for signature.

### IV. Question of Attorney's Fees

■ In suits like this one to enforce orders of the Railroad Board, a reasonable attorney's fee must be "taxed and collected as a part of the costs of the suit" when the plaintiff is successful. 45 U.S.C. § 153, First (p). In this case, there is no dispute about this basic proposition. However, defendant contends that plaintiff's attorney in this case is not entitled to *any* fees or, in any event, to no more than nominal fees because the Railroad had agreed to pay plaintiff his back pay and, in fact, had paid him most of that back pay before plaintiff's attorney filed a complaint in this court.* Defendant suggests that the efforts of plaintiff's attorneys had nothing to do with plaintiff's recovery and asks this court, in effect, to read a kind of "proximate cause" requirement into the provisions of the Railway Labor Act dealing with attorney's fees. To this contention there are several replies.

■ In the first place, it is at best highly doubtful that defendant's factual contention would stand. Neither plaintiff nor plaintiff's attorneys received any indication of defendant's willingness to compensate plaintiff for lost back pay until the plaintiff had retained an attorney. The indication received then was neither clear nor definite as to time or amount of payment. Even as of today, plaintiff has not received all the back pay owing to him. To plaintiff's district court complaint (filed about two weeks before the applicable statute of limitations was to run), defendant filed an answer putting substantially the whole matter in dispute and effectively asserting his right to a trial *de novo* here on the issues once determined by the Board proceeding. Defendant stoutly opposed compensation for overtime or interest to plaintiff, and the fact that plaintiff will receive money for these items is indisputably the product of his attorneys' efforts. On the basis of the whole record and history of this case, I am personally convinced that the plaintiff would not have received the amount due him if it were not for the zealous and able representation of his attorneys.

■■ In the second place, the subsection of the Railway Labor Act governing attorney's fees in proceedings like these; namely, 45 U.S.C. § 153, First (p), evidences a policy designed to serve two purposes: (1) assuring aggrieved employees, who may not be able to afford legal fees, adequate legal representation in asserting their grievances; and (2) assuring attorneys adequate compensation for their time and services. Both of these purposes would be seriously undercut and perhaps defeated if courts were to require lawyers to prove that it was their work and not other factors which caused the result their clients desired. Accordingly, this court is of the opinion that successful attorneys in cases like this one ought to receive fair compensation for their services. Defendant has directed us to no case to the contrary, and there seem to be none in point on either side of the controversy.

What is "fair compensation" or a "reasonable attorney's fee" in this case? Canon 12 of the Canons of Professional Ethics of the American Bar Association suggests:

> "In determining the amount of the [lawyer's] fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

---

* At a date that does not appear of record, plaintiff received a letter dated April 15, 1963, containing pay drafts for much of the amount of back pay owing to him. On April 16, 1963, plaintiff's attorney filed a complaint in this court. On May 20, 1963, defendant's attorney filed an answer, thereby placing in dispute most of the substantial allegations of plaintiff's complaint. As of May 2, 1967, and as far as we know as of today, plaintiff still has not received all the back pay coming to him.

(2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

In Brotherhood of Railroad Signalmen of America v. Southern Railway Co., 380 F.2d 59 (4th Cir. 1967), the court considered the same question in a suit seeking enforcement of an order of the Railroad Adjustment Board; in other words, a suit precisely like the one before us. In that case the court said:

"In determining reasonable attorneys' fees, factors to be taken into account are the importance and complexity of the issue being litigated, the quality of the legal services, and the time required for preparation and court appearances. The standards employed in compensating attorneys for the opposing party in litigating the selfsame issue give some indication of the importance of the case and are a relevant consideration in fixing the fees. This list is not meant to be exhaustive and in any future application for fees, the District Court may consider all factors which its experience suggests as pertinent." Id. at 69 (dictum).

■■ This court has carefully considered all the above-mentioned factors. It has also considered the long period of time during which the labors of plaintiff's attorney went uncompensated. Taking these factors into account, I believe that $3,906.24—the amount suggested and itemized in a memorandum letter of February 9, 1967, from plaintiff's counsel—is a reasonable attorney's fee in this case for services rendered up to and including that date. Of that amount, $1,000 must be paid to plaintiff himself in order to compensate him for a bill he paid to the prior attorney who handled this case in its earlier stages. I also believe that plaintiff's attorney is entitled to compensation at the minimum hourly rate set by the Wisconsin Bar Association for his work on this case since February 9, 1967, including the labor involved in obtaining his fee. Plaintiff's attorney is requested to submit a bill for his services after February 9, 1967, draft an appropriate order, secure the approval as to form of defendant's attorney, and submit the document to this court for signature.