LOCAL UNION 494, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff,

v.

ARTKRAFT, INC., et al., Defendants.

Civ. A. No. 72–C–535.

United States District Court, E. D. Wisconsin.

May 29, 1974.

Gerry M. Miller, Milwaukee, Wis., for plaintiff.

John H. Wessel, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

Plaintiff has moved for summary judgment enforcing an arbitrator's award. The motion is granted. Plaintiff is a labor organization representing over 50 employees working in the sign industry, an industry affecting commerce. Defendants are six Milwaukee employers engaged in the manufacture, installation, and maintenance of signs. They are represented, for purposes of collective bargaining, by an association known as Sign Industry Employers of Milwaukee and Vicinity.

On September 1, 1970, the parties entered into a two-year collective bargaining agreement calling for an immediate wage increase and further increases effective September 1, 1971. On August 15, 1971, the "Phase I" wage-price freeze was instituted by order of the

President of the United States under the Economic Stabilization Act of 1970 ("E.S.A."), 12 U.S.C. § 1904; Exec.Order No. 11615, 3 C.F.R. 199. Therefore, the *wage increase due September 1, 1971, was not put into effect.*

On December 22, 1971, the E.S.A. Amendments of 1971 were approved. These included provisions that the President take action to require or permit the retroactive payment of certain wage increases which were scheduled but not paid during Phase I, §§ 203(c)(2) and (3) of P.L. 92–210, 85 Stat. 743. On December 27, 1971, the employers implemented the scheduled wage increases but retroactive only to November 14, 1971, the day the 90-day wage freeze ended.

Starting in February of 1972, the plaintiff made demands that the defendants pay the retroactive wage increase for the period between September 1, 1971, and November 14, 1971. A formal demand was made on March 16, 1972. The employers refused, however, claiming that the Pay Board regulation § 201.13, issued on January 27, 1972, did not require them to do so.

After further unsuccessful efforts to resolve the issue, the matter was heard by the Council on Industrial Relations for the Electrical Contracting Industry in Washington, D. C., on May 25, 1972. The Council is the body designated by the collective bargaining agreement to arbitrate grievances and render decisions which will be final and binding on both parties.

On May 25, 1972, the Council issued a decision which stated:

"Based on the evidence submitted and under the terms of the existing approved Agreement, payments of specific amounts of monies during the period of September 1, 1971 to November 14, 1971, are required by this contract. Any other resolution is subject to Pay Board procedures under present Federal regulations."

Thereafter, the parties were unable to reach agreement on the meaning of the last sentence of the decision. On June 13, 1972, the plaintiff wrote to the Milwaukee office of the Internal Revenue Service, the agency authorized to interpret and apply Pay Board regulations on a local level, for an interpretation of Pay Board regulations which were applicable to the case. On July 7, 1972, the District Director replied setting forth the requirements of § 201.13(b) of the Pay Board regulations and the following paragraph of clarification:

"The regulations regarding retroactivity do not authorize the Pay Board or Internal Revenue Service (Stabilization) to require the payment of retroactive increases if the requirements of the applicable regulation sections are met, and the employer wishes to make such permitted payments. Therefore, the existing Economic Stabilization Regulations relating to pay matters should not be interpreted as directing specific performances or nonperformance of that which is, in essence, a contractural [sic] obligation."

Thereafter, plaintiff again demanded payment based on the contractual agreement, the decision of the arbitrator and the letter from the Internal Revenue Service. The defendants, however, still refused to pay, claiming they were not required to do so. The plaintiff then wrote the Council on Industrial Relations asking for clarification of its decision. On September 13, 1972, the Council secretary replied that the employees were entitled to retroactive pay beginning September 1, 1971. The defendants contested the authority of the letter from the Council since it was signed only by the secretary. On October 27, 1972, a second letter was sent by the Council which stated:

" * * * it is the Decision of the Council that Sign Industry Employees in question are entitled to scheduled wage increases for all work performed *during the period September 1, 1971 thru November 14, 1971* and Employers are directed to pay retroactive wages immediately."

It was signed by both the Secretary and Treasurer of the Council.

The wage increase involved here does not exceed 7%. Defendants allege that the amount in controversy exceeds $9,000.00 and fifty-three employees are involved. Jurisdiction of the court is founded upon § 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a), and on § 201(a) of the E.S.A. Amendments of 1971.

Three issues have been raised in this case. First, is the plaintiff entitled to the retroactive wage increase for the period between September 1, 1971 and November 14, 1971? Second, if it is, should 6% interest be granted on this back pay from the date of the arbitration award? Third, should plaintiff receive reasonable attorneys' fees for this litigation?

█ The first issue involves interpretations of the arbitration award, the E. S.A. Amendments, and the Pay Board regulations. As noted above, the May 25, 1972, decision of the Council on Industrial Relations for the Electrical Contracting Industry stated that under the contract, payment of the wage increase from September 1, 1971 to November 14, 1971 was required. However, the decision also stated: "Any other resolution is subject to Pay Board procedures under present Federal regulations." The only reasonable interpretation of this decision is that the employees should be granted their retroactive pay increase unless the Pay Board regulations preclude it.

Therefore, one must turn to the Pay Board regulations and corresponding statutory sections to see what effect, if any, they have on the employees' contractual right to their back wages. The E.S.A. Amendments of 1971 contain certain permissive and mandatory sections for payment of retroactive pay increases. Section 203(c)(2) of the E.S.A. says that the President shall take action to permit payment of a wage increase which (1) was agreed to in an employment contract before August 15, 1971; (2) was scheduled to take effect prior to November 14, 1971; and (3) was not paid as a result of orders issued under this title unless such an increase is unreasonably inconsistent with the standards for wage and price increases. Section 203(c)(3) of the E.S.A. deals with mandatory payment of certain wage increases. However, both parties agree that this section is not applicable to this case, and it will be dealt with only as it relates to § 203(c)(2).

The legislative history of these two sections shows that both were intended to require the payment of wage increases. The Conference Committee report (H.Rept. No. 92–745) states:

"The conferees intended to require retroactive and deferred pay under either the House provisions (203(c)(3)] or the Senate provisions [§ 203(c)(2)], whichever provision would authorize such payments to be made." 117 Cong.Record, House 46601, Dec. 13, 1971.

Debates in the House of Representatives indicate the same interpretation; i. e., under both sections contracts made before August 15, 1971, were intended to be enforced. See 117 Cong.Record, House 46840, Dec. 14, 1971.

Following enactment of the E.S.A. Amendments, interpretive Pay Board regulations were promulgated. Section 201.13(b) of the regulations is the major source of conflict between the parties. It provides that payment of wage increases may be made if (1) they were agreed to in an employment contract made prior to August 15, 1971; (2) they were scheduled to take effect prior to November 14, 1971; and (3) they were not paid due to orders under the E.S.A.; and (4) the increases do not exceed 7%, and, in the case of an employer with less than 5,000 employees, the employer certifies by letter to the local Internal Revenue Service office twenty days after payment that the above con-

ditions have been met.[1] Fed.Reg. Vol. 37, No. 18, p. 1242.

■ In light of the legislative history of E.S.A. Amendments, the most reasonable interpretation of § 201.13(b) is that if the conditions set forth in the section are met, the Pay Board regulations do not preclude enforcement of a wage increase under a valid employment contract.

The letter from the local District Director of the Internal Revenue Service to both parties also seems to support this interpretation. In essence, he said that if the requirements of the regulations are met, then the regulations should not interfere with contractual obligations. This interpretation is also supported by at least two arbitration awards: Grace Hospital, 58 L.A. 1363 (1972); Reimer Meats (Lee, 1972), unpublished.

Therefore, under the E.S.A. Amendments and under the Pay Board regulations, a valid contract should be enforced if the requirements are met. In this case those requirements have been met: The contract was made before August 15, 1971; the wage increase was scheduled to take effect before November 14, 1971; it was not paid due to orders under the E.S.A.; it does not exceed 7%; and less than 5,000 employees are involved so no prior notification was required. Therefore, the court must enforce the arbitrator's award and order the wage increase for the time period between September 1, 1971 and November 14, 1971, to be paid.[2]

The second issue is whether 6% interest on the back pay from the date of the award should be granted. Interest has been awarded in numerous other back pay situations on the theory that back pay creates a debt from employer to employee, and interest is needed to make the employee whole. It is not equitable for the employer to have the use of the employee's money without paying the employee for this use. For examples of where interest has been awarded see Philip Carey Mfg. v. N.L.R.B., 331 F.2d 720 (6th Cir. 1964) (back pay award of N.L.R.B.); McClanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971) (back pay under Fair Labor Standards Act); Dieringer v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 278 F.Supp. 211 (E.D. Wis.1968) (back pay due railroad employee); United Steelworkers of America, AFL–CIO v. Butler Mfg. Co., 439 F. 2d 1110 (8th Cir. 1971) (§ 301 breach of contract action; group insurance premiums to be paid by employer.)

■ In this case the arbitrator's award requiring payment of the retroactive wage increase created a debt between the employer and employee. During the period of noncompliance the employers have had use of the employees' money. In order to make the employees whole they are granted 6% interest from the date of the original arbitration award on the wage increase which is due from September 1, 1971 to November 14, 1971.

■■ The third issue to be decided is whether plaintiff should be awarded reasonable attorneys' fees for this litigation. It has been recognized that the courts have the equitable power to award attorneys' fees in § 301 cases brought to enforce arbitration awards. Local No. 149 International Union, U.A., A. & A.I.W. v. American Brake Shoe Co., 298 F.2d 212 (4th Cir. 1962). This has been justified because it is needed to compensate plaintiffs who must resort to the courts for the enforcement of arbitration awards. Granting attorneys' fees is also an appropriate way to enforce National labor policy. United Steelworkers of America, AFL–CIO v.

---

1. Defendants rely on § 201.13(b)(4)(ii) which only applies when the wage increase *exceeds* 7%, which is not the case here.

2. Since the original award is to be enforced, the court does not need to reach the issue of the validity of subsequent Council letters which clarified the original award. However, under Council Rule XV the secretary is given authority to answer requests for interpretation, and thus these letters should be authoritative.

Butler Mfg. Co., 439 F.2d 1110 (8th Cir. 1971); Bilo Corp. v. Typographical Union, 82 LRRM 2575 (N.D.Texas, 1972). The standard which has been developed in § 301 cases is whether the party acted "without justification" in refusing to abide by the arbitration award. Local No. 149 International Union, U.A., A. & A.I.W. v. American Brake Shoe Co., supra; International Union of Dist. 50, U.M.W. v. Bowman Transportation, Inc., 421 F.2d 934 (5th Cir. 1970); United Steelworkers of America, AFL–CIO v. Butler Mfg. Co., supra; Retail Clerks v. Employers Committee, 81 LRRM 2671 (D.Or.1972); Bilo Corp. v. Typographical Union, supra.

In this case I cannot find as a matter of law that the defendants were not justified in refusing to comply with the arbitration award.

It is therefore ordered that the plaintiff draft an order for judgment in accordance with this opinion and submit it to the court for signature after having first submitted it to opposing counsel for approval as to form only.