**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL UNION NO. 162, an unincorporated association, Plaintiff,**

v.

**B.J. HEATING & AIR CONDITIONING, C & M Sheet Metal, Custom Aire, Horrell & Sons, Inc., Placer Heating & Air Conditioning, Ring Heating, Inc., River City Mechanical, Sierra Air Conditioning & Sheet Metal, Soracco Sheet Metal, Sunset Mechanical Contractors, and Williams Air Conditioning, Defendants.**

**Civ. No. S–81–610 EJG.**

United States District Court,
E.D. California.

Nov. 25, 1987.

Katherine Sure, Christopher Platten, Wylie, McBride, Jesinger & Sure, San Jose, Cal., for plaintiff.

Ronald W. Brown, Leslie Mitchell, Thierman, Simpson & Cook, Sacramento, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

EDWARD J. GARCIA, District Judge.

This action involves plaintiff's pursuit, since 1981, to enforce under § 301 of the Labor Management Relations Act, [29 U.S.C. § 185], an arbitration award by the National Joint Adjustment Board in favor of plaintiff pursuant to an interest arbitration clause contained in the parties' collective bargaining agreement (CBA). Despite the tortuous history of this case, the law is clear that the interest arbitration clause (i.e. Article X § 8 of the CBA) and the arbitration award rendered pursuant to that clause are enforceable. *Hotel and Restaurant Employees v. Williams*, 752 F.2d 1476 (9th Cir.1985); *Sheet Metal Workers v. Huggins Sheet Metal, Inc.*, 752 F.2d 1473 (9th Cir.1985); *America Metal Products, Inc. v. Sheet Metal Workers*, 794 F.2d 1452 (9th Cir.1986). This court has previously granted summary judgment in favor of plaintiffs as to liability and confirmed the arbitration award of a new contract. (See the memorandum and order

filed on August 13, 1984). The court now addresses the question of damages. Following a status conference, and with the consent of counsel, trial on the matter of damages was referred to a specially appointed Master, Mr. Donald H. Wollett, (Master) pursuant to Rule 53, Fed.R.Civ.P. Issues regarding the calculation of damages were referred to the Master, but the court retained the issues raised by plaintiff's amended pleadings which assert certain alter ego theories of liability against newly added defendants (i.e. Deluxe Heating and Air Conditioning, Main Avenue Heating and Air Conditioning, LeRoy Dunlap, John Hickey, Donald Ring, Carol Ring, George Garabedian and David Soracco).

The matter of damages proceeded to trial, and on January 1, 1987 the Master filed his report with proposed findings of fact and conclusions of law. Plaintiff and defendants have timely filed objections as to the Master's report. Oral argument was heard on the objections on April 24, 1987. Christopher Platten and Kathryn Sure appeared for plaintiff. Ronald Brown and Leslie Mitchell appeared for defendants. At the hearing, defendants moved orally to strike certain evidence submitted by plaintiff, and the court continued the matter to June 9, 1987 for supplemental briefing. The objections stood submitted as of June 9, 1987. Also before the court is a motion for recusal filed by defendants on June 19, 1987.[1]

## I. *Recusal*

■ Defendants' motion for recusal is denied. The motion seeks to disqualify this judge from presiding on any further proceedings in this matter. It was brought under 28 U.S.C. § 455(a) on the alleged grounds that the evidence proffered by plaintiff and which defendants want stricken have caused "... the appearance of impartiality [of this court] to be lost in the present case." (Defendants' notice of motion and motion for recusal, p.2 LL 10–11).

In sum, defendants contend that certain allegations by plaintiff against defendants' attorneys (allegations defense counsel insists are false) have tainted at least the appearance of this court's impartiality. Defendants are mistaken. The evidence complained of is captioned "second declaration of Christopher E. Platten in support of plaintiff's motion for action upon the report of the special master and upon plaintiff's objections thereto". It contains exhibits which include a stipulated statement of facts and deposition excerpts from another related action before this court brought by one of the defendants herein.[2] Defendants' theory that the court's viewing of the materials from the *River City* action warrants disqualification in this action is absurd. Obviously, someone must examine the materials to be able to rule upon their admissibility in this action. If defendants' theory were accepted, no one could ever make that determination because, as defendants put it, "... no reasonable person could help but be swayed by the repeated misrepresentations directed toward defendants and their attorneys by the union." (Defendants' Points and Authorities in Support of Motion for Recusal, P.8, L.2). Section 455(a) does not require, and indeed, does not permit that result. Defendants' motion is simply devoid of any merit whatsoever and is accordingly denied.

Defendants' motion has caused the court to exercise its continuing responsibility under § 455(a) to view all of the circumstances in this case to determine whether a recusal *sua sponte* is appropriate under either § 455(a) or (b)(1). In so doing, the court can find no basis to warrant recusal. *See United States v. Olander,* 584 F.2d 876 (9th Cir.1978) and *United States v. Sibla,* 624 F.2d 864 (9th Cir.1980).

## II. *Defendants' Motion to Strike*

[2] Defendants' motion to strike is denied. Defendants seek to have stricken from consideration in this action the *Plat-*

---

1. Although defendants formally noticed for hearing a motion to strike and a recusal motion, both motions were subsequently ordered submitted without oral argument. Local Rule 230(h).

2. *See Jim R. Keeling, dba River City Mechanical v. Sheet Metal Workers International Association, Local Union 162;* Civ. S–83–1255 EJG [*River City Mechanical*].

*ten* declaration and its exhibits referred to *supra.* Defendants contend that the documents attached to that declaration, which are documents from the *River City Mechanical* action (See f/n 2 *supra*) are inadmissible herein because they are "unsworn, irrelevant, and self serving, as well as untrue." The motion to strike will be denied. As for the excerpts from the Keeling depositions the testimony was sworn. As for the stipulated statement of facts from the *River City Mechanical* action, defendants correctly note that it is not sworn testimony subscribed by anyone alleging personal knowledge. However, the court need not rely on the statement for the purpose of ruling on the present objections to the Master's findings and conclusions. To the extent plaintiff relies on the Keeling/River City stipulated statement of facts in support of its claim for punitive damages, the court is deferring its ruling on such damages until plaintiff's alter-ego claims are resolved. (See discussion below regarding punitive damages). As for the excerpts from the reporter's transcript of the November 30, 1984 hearing in this action, there is no reason to strike the transcript. Those excerpts simply remind the court that it was accepting at face value defense counsel's protestations on the record that counsel had nothing to do with the defendant companies' alleged activities in setting up alter-ego businesses. At oral argument defense counsel expressed dismay that this court would infer from the evidence then being considered that there was at least some basis for suggesting that counsel was in part responsible for the alleged alter-ego activity. The court admonished counsel that it had no quarrel with counsel's denial "until it was prove[n] otherwise". (R/T p. 43, L.6). Plaintiff now submits the Brown letter as at least some evidence that counsel's denial may not have been fully candid. However, until the remaining alter-ego issues are resolved, the court will not attempt to determine whether counsel's representations at the November 30, 1984 hearing were true.

Although punitive damages are not being ruled on at this time, the court notes that the defendants' relevancy arguments, simply miss the mark. It's asserted that "[t]he union argues that somehow the actions of the defendants' attorneys in another case should result in a finding of bad faith against defendants in this case". (Defendants' points and authorities in support of motion to strike, P.6, LL. 15–18). However, River City Mechanical was named as a defendant in this action and was represented by the same law firm that represented all 12 of the original defendants in this action, as well as the remaining defendants. The conduct alleged by plaintiff pertains to the circumstances involving *this action,* not some other action. The decisions to repudiate the contract, the methods chosen for doing so and the alleged litigation strategy (all of which are complained of by plaintiffs as having been in bad faith) relate to the time when, as defendants state, "... *River City Mechanical* was still part of an *ad hoc* group of contractors, including the defendants herein, who were trying to negotiate a residential contract with the union". (defendants' points and authorities in support of recusal, p.3, LL. 11–15). Thus, defendants are simply inaccurate when they charge that "[i]t is grossly improper of the union to attempt to poison the court against these defendants by dragging in irrelevant and unrelated matters from another case." (defendants' points and authorities in support of motion to strike, p.6, L.23). In sum, the proffered evidence appears to be relevant. Unfortunately, the issue on which the evidence is proffered is alleged bad faith and not surprisingly the proffer draws vehement efforts to strike the evidence.

The court reiterates that the evidence contested by defendants in its motion to strike is not weighing in the court's decisions on the cross objections to the Master's Report. For now, however, there is no reason to strike the proffered evidence. If plaintiff is able to prove its alter-ego allegations and it later appears in light of all of the evidence that punitive damages are appropriate, the evidence attacked herein may become more important. In that context, defendants will have ample

opportunity to refute plaintiff's evidence when those issues are litigated.

### III. *Defendants' Objections to Master's Report*

#### A. *3 to 1 Ratio*

The Master concluded that under the contract the employer could hire one residential worker only after that employer had hired three journeymen. Defendants contend that this interpretation defies the plain language of the contract. Under defendants view, the ratio means that an employer could hire one residential worker if it hired 1, 2 *or* 3 journeymen. Thus, say defendants, one residential worker can be hired after one journeyman has been hired. Plaintiff contends that defendants waived the issue by failing to address this argument to the Master. Plaintiff further asserts that defendants made a contrary argument by insisting that a "favored nations" clause be read into the contract so as to establish a 1 to 1 ratio based on a particular employer having been provided such a ratio whereas the others were not. Finally, plaintiff argues that the Master's interpretation is not clearly erroneous.[3] Defendants' reply that the interpretation of a contract is a question of law and accordingly, reviewable *de novo*.

█ Contract interpretation presents a mixed question of law and fact. The court must first determine whether an ambiguity exists (which is a question of law), and if so, what the parties intended (a question of fact). *State Farm Mutual Automobile Insurance v. Fernandez*, 767 F.2d 1299 (9th Cir.1985). Section 9 of the contract states that "[t]he employer may employ residential workers on the basis of one (1) residential worker to three (3) journeymen regularly employed on work defined in sections 2 and 3 of this agreement." That language simply fails to support an interpretation that a ration of 1 to 3 actually means 1, 2 *or* 3 journeymen. The sentence itself is not ambiguous and clearly supports the conclusion of the Master. However, defendants rely on a table in the

contract which follows the above-quoted sentence. It reads as follows:

"1 through 3 journeymen 1 residential worker

4 through 6 journeymen 2 residential workers

7 through 9 journeymen 3 residential workers

10 through 12 journeymen 4 residential workers

13 and over journeymen 5 residential workers—max."

Other than the sentence noted above, the table is not explained.

If one isolates only on the table, an ambiguity can be found. One through three might be read to mean 1, 2 or 3 as defendants argue. However, assuming an ambiguity, the Masters resolution of the parties' intent (a question of fact) is not clearly erroneous. To the contrary, his interpretation appears to be the only plausible resolution of the issue. To accept defendants' interpretation of the table, which is the only ambiguous part of the ratio provision, would be to ignore the immediately proceeding contractual language. The first choice when construing a contract is to give effect to all of its provisions where possible. *Arizona Laborers, Teamsters and Cement Masons, Local 395 v. Conquer Cartage Co.*, 753 F.2d 1512 (9th Cir. 1985). The operative language of § 9, which is not ambiguous, not only supports but appears to require the interpretation given by the Master. For that reason, defendants' objection to the Master's Conclusions regarding the 3 to 1 ratio is rejected and the Master's findings and conclusions on the issue are adopted.

#### B. *Offset—Back Wages*

█ Defendants contend that dues and assessments awarded by the Master for the period of August 16, 1983 to March 1, 1984 should be subtracted from the award of back wages for the same period. The contention is rejected. The Master properly

---

**3.** In non-jury actions such as this, the court shall accept the Master's factual findings unless

clearly erroneous. Rule 53(e)(2), Fed.R.Civ.P.

determined that back dues and assessments were compensable items of damage under § 301 as a result of defendants' wholesale breach of the contract.

Defendants cite no authority for shifting responsibility for the payment of those damages to the employees, to be taken out of their back wages. Defendants' objection is rejected and the Master's findings and conclusions on the question are adopted.

## C. *Termination Dates*

■ After hearing and weighing directly conflicting testimony, the Master made factual findings that the parties had agreed to split the difference on the deadlocked issue of a termination date and therefore settled on March 1, 1983. Applying a one year rollover clause of the contract, the Master concluded that the contract terminated on August 31, 1984. Defendants argue that the Master "created from whole cloth a rule of law requiring the defendants to communicate their rejection of the Union's offer of a particular termination date." Defendants insist that the Master's conclusion turned on the failure of defendants' counsel to report back that there was no settlement on a date of March 1, 1983. However, defendants misstate the basis for the Master's conclusion. His written findings and conclusions on the matter are quite clear. His analysis turned on his finding that the testimony by Mark Thierman (the attorney for defendants who negotiated the termination date) was not credible. The Master specifically discounted Thierman's version of the facts, and the carefully analyzed findings in this regard are not clearly erroneous. Rather, the Master recited clear and convincing reasons why he was unable to accept as true Thierman's version of what happened. Accordingly, defendants objections to the termination date are rejected, and the Master's findings and conclusions on the termination date are adopted.

## D. *Favored Nations Clause*

■ The separate contract for B.J. Heating dated April 22, 1983 contained a 1 to 1 residential worker to journeyman ratio. Defendants argue that their contracts either included, or should have included, a favored nations (or equal contract provisions) clause. Under such a clause, defendants assert that they too should have received a 1 to 1 ratio. However, the Master found that their contracts did not include a favored nations clause. Defendants now argue that the finding was clearly erroneous and contrary to the overwhelming weight of the evidence. Defendants rely on the testimony before the Master of Mr. Thierman. However, as with the dispute on the termination date, the Master heard conflicting testimony and again made specific factual findings discrediting Thierman's testimony. The Master spelled out cogent reasons for not believing Thierman's account of the facts. His findings in this regard are not clearly erroneous and defendants' objection is rejected.

For the above stated reason, defendants' request that this matter be remanded to the Master is denied, and the Master's findings and conclusions on the question are adopted.

## IV. *Plaintiff's Objections to Master's Report*

### A. *Non–Covered Work Offset*

At trial the parties stipulated that certain hours worked by particular employees constituted "shop-work" and thus would not be compensable as damages for breach of the contract. Pursuant to that stipulation, hours reported in the audits of the records as "shop-work" would not be included in the calculation of damages for wage deficiencies. Plaintiff asserts that the Master mistakenly credited defendants with an offset against covered work by erroneously subtracting wages paid for work that was covered. Defendants' opposition brief does not address the contention. Moreover, it appears from plaintiff's Platten declaration that a clerical error occurred and that plaintiff's objection should be sustained. Accordingly, the calculation of damages is hereby modified to correct the mistake by adopting the corrected pages for the Master's Report as proposed in the Platten declaration.

B. *Pre–Judgment Interest* ·

 The Master awarded pre-judgment interest of 10% from August 10, 1984 to the date of entry of judgment. The Master looked to state law to "flesh out" the remedial considerations, citing *Textile Workers Union of American v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Master noted that pre-judgment interest serves at least two purposes. One being compensatory with a view toward a more accurate determination of the true cost of money damages that have been incurred. The other being to detour a party's attempt to benefit unfairly by the inherent delays of litigation. Although the Master found, from that part of the record before him, that the latter consideration is not applicable, this court does not. (See the discussion below regarding this court's concern over the defendants' unfairly benefiting from litigation delays even before the matter of damages was referred to the Master). Assuming that the portion of this litigation that proceeded before the Master does not appear to warrant pre-judgment interest prior to August 10, 1984 (the date this court denied what was then represented as defendants' motion for summary judgment; *see* discussion, *infra* ), it is nonetheless apparent to the court that an award of full pre-judgment interest is called for here.

The matter of pre-judgment interest is addressed to this court's discretion which must be exercised by balancing the relative equities involved. *Wessel v. Buhler*, 437 F.2d 279 (9th Cir.1971). In essence, such interest is awarded when it is not inequitable to do so. *Board of Commissioners v. United States*, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939). In this case the defendants deliberately chose to repudiate their contracts, and to take their chances as to their doubts regarding the enforceability of the interest arbitration provisions in the contracts. Defendants having gambled and lost should not now be heard to complain that an award of pre-judgment interest is unfair. Rather, it would be inequitable to permit defendants to have had the use of plaintiff's money for so many years (particularly in light of the litigation history summarized below) without paying for that use. *See e.g. IBEW, Local 494 v. Artkraft, Inc.*, 375 F.Supp. 129, 132 (E.D. Wisc. 1974). Moreover, pre-judgment interest is traditionally granted in contract actions where the damages are capable of being made certain by calculation. *See Leff v. Gunter*, 33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740 (1983). Plaintiff's losses herein are capable of such calculation.

Looking to state law teaches that pre-judgment interest turns not necessarily on when liability is decided but on what the court determines as to liability. 1 Witkin, *Summary of California Law, Contracts*, § 655, p. 556–7. Pre-judgment interest should be awarded whenever the damages are made certain of computation and not merely from the date liability is ascertained. It is clear under California law that even a dispute as to the amount of damages does not prevent damages from being made certain of calculation where, as here, the amount of recovery closely approximates plaintiff's claim. Moreover, the decision to repudiate the contract did not center on any guess work as to the amounts involved, but rather on defendants' contention that it would not have to abide by the interest arbitration clause of the contract. Thus, the certainty of calculation of damages in this case dates back to the time of the deliberate and wholesale breach of the contract. Accordingly, plaintiff is entitled to pre-judgment interest from the date of defendants' breach which occurred in July 1981.

As for interest on the trust fund monies, defendants argue that the liquidated damages provision in the contract is the exclusive remedy and thus precludes pre-judgment interest. However, that provision of the contract simply requires the employer to pay a delinquent penalty of 10% and in no way precludes an award of pre-judgment interest.

For the reasons stated above, plaintiff is awarded pre-judgment in the amount of 7% for the period of July 1981 to June 30, 1983, and 10% for the relevant periods after June 30, 1983. *See* California Civil Code § 3289.

### C. *Lost Dues*

[8] The Master awarded lost dues but only as of August 16, 1983. The Master reasoned that plaintiff's withdrawal of workers from the defendants' Shops in response to the defendants' repudiation of the contract precludes an award prior to plaintiff's August 16, 1983 demand for compliance. However, that analysis appears to reopen rulings already made by this court in its order of August 13, 1984 wherein such a premise was considered and rejected. The court already specifically analyzed the question and held that the "strike" did not preclude enforcement of the contractual terms. Thus, plaintiff is entitled to lost dues dating from the date of the July 1981 breach.

Plaintiff's additional request for an award of prospective dues for a period equal to the term of the contract is not fully explained. However, it appears to be a request for a remedy punitive in nature and is therefore subject to the analysis below.

### *Punitive Damages and Injunctive Relief*

As has been previously noted, this court remains concerned about the defendants' deliberate wholesale repudiation of a binding contract and their "see you in court" approach taken in this case. Moreover, the court notes the pattern of relitigating issues resolved years before. Of particular concern is defendants' conduct in churning the question of interest arbitration. Judge Wilkins, the predecessor Judge in this case, upheld the enforceability of the interest arbitration clause on January 18, 1983. This order was clear, but defendants responded with a motion to amend the ruling. The motion was denied by Judge Wilkins on June 6, 1983.[4] Defendants again responded with another motion, captioned as a motion to clarify the January 18, 1983 and June 6, 1983 orders. That request was denied by Judge Wilkins on November 21, 1983.

On December 15, 1983 the Ninth Circuit Court of Appeals affirmed Judge Wilkins' ruling of January 18, 1983. On March 27, 1984 this action was reassigned to this judge. Shortly thereafter, on April 27, 1984, defendants again sought reconsideration on the interest arbitration question. However, this time it was sought from the undersigned judge. The request was brought under the guise of an improperly captioned motion for summary judgment. That motion was denied by this court's order of August 13, 1984. Defendants responded to that order with still another motion for reconsideration. That motion was denied by this court's order of February 5, 1985 and defense counsel was sanctioned for bringing a motion "in bad faith and for the purposes of delay." (Order of August 13, 1984, p. 2 L. 11).

To say the least, there is some indication from the record that a significant amount of the litigation in this case was the result of defendants' refusal not only to accept the contract they negotiated, and the jurisdiction and rulings of the National Joint Adjustment Board, but also the result of defendants' refusal to accept the rulings by the several judges before whom they have appeared. The persistence in such litigation strategy is demonstrative of improper motives such as to delay the effect of the ultimate judgment in this matter. That conduct further supports plaintiff's claim of entitlement to punitive damages. However, as noted above in connection with defendants' motion to strike, the court prefers to postpone ruling on the plaintiff's request for punitive damages until the allegations regarding the establishment of alter-ego companies for the purpose of avoiding judgment are resolved. Thus, the court defers ruling on punitive damages at this time, but will consider the matter in

---

**4.** Not only did defendants request Judge Wilkins to amend the order, but they appear to have divested him of jurisdiction to do so by filing a notice of appeal from the order on February 15, 1983. Pursuing the motion to amend without disclosing the intervening divestiture of jurisdiction to grant the motion constituted a breach of defendants' counsel's duty of candor. *See Pipe Trades Council of Northern California v. Underground Contractors Association of Northern California,* 828 F.2d 609 (9th Cir.1987), which affirmed the imposition of sanctions under such circumstances.

light of both the above described record and the findings the court ultimately reaches on the alter-ego issues.

### Fees and Costs

Plaintiff objects to the Master's failure to award plaintiff attorney's fees and costs. However, under Local Rules 292 and 293, the question of fees and costs was not before him. Those rules provide that motions for fees and costs shall be addressed to the court post judgment.

Plaintiff has now prevailed on the question of liability as to the originally named employers, and the damages issues have now been determined except for the question of punitive damages. Thus, the only matters which remain are the liability of the alleged alter-ego defendants and the question of punitive damages. For that reason, the court sees no just cause for further delay in the entry of judgment against the primary defendants for damages herein awarded. See Rule 54(b), Fed. R.Civ.P. Similarly, there is no further reason to delay ruling on liability for attorneys' fees and costs which the parties have already fully briefed. Therefore, the matter will be addressed below.

■ Plaintiff seeks fees under the contract as well as under the bad faith exception to the general American rule that each side bear their own expenses of litigation. Under that exception, fees can be awarded based on bad faith in "exceptional cases and for dominating reasons of justice." *United States v. Standard Oil of California*, 603 F.2d 100, 103 (9th Cir.1979). Bad faith is shown in a challenge to an arbitration award where the challenge was "without substantial justification." *Sheet Metal Workers International, Local 420 v. Kinney Air Conditioning*, 756 F.2d 742 (9th Cir.1985). The court need not repeat the litigation record noted above in this case.

Obviously, that record shows that plaintiff has been subjected to needless repetitive litigation of issues and years of undue delay as a result of defendants' conduct.[5] This court previously found in its order of August 13, 1984 that at least one example of persistent refusals to accept the court's rulings was in bad faith. After examining the record in this case as a whole, the court concludes that defendants' breach of the contracts and litigation of this matter was not in good faith. Even if defendants' initial effort to defeat the arbitration award based on such theories as alleged bias by the Board, or that the arbitration clause was not enforceable are assumed to have been in good faith, the defendants' course of conduct in this litigation strongly suggests otherwise. The court finds that defendants' conduct was designed to effect delay and perhaps the financial advantage of being able to bludgeon plaintiff into a discounted settlement. As such, this dispute was litigated in bad faith and attorney's fees and costs are warranted. The court concludes that based on its finding of extraordinary delay occasioned by defendants' bad faith conduct in this case, dominating reasons of justice require that plaintiff be awarded fees and costs. *United States v. Standard Oil of California, supra*.

■ Apart from the question of bad faith, plaintiff is also entitled to fees and costs under the contract. The contract specifically provides that attorney fees and costs shall be recoverable when incurred in the collection of delinquent trust fund contributions. Clearly the litigation expenses by plaintiff were necessarily incurred to recover the trust fund contributions withheld by defendants pursuant to their wholesale breach of the contract. Moreover, the litigation efforts expended to recover those contributions were inextricably intertwined

---

**5.** It's with some insight that plaintiff observes that had the (Union) resorted immediately to economic action when the employers herein chose to ignore the NJAB process in July of 1981, they would have faced a probable *Boys Markets* injunction as well as possible sanctions. See *Boys Markets, Inc. v. Retail Clerk's, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199

(1970). The court further notes that courts have held in other types of contract actions that a deliberate breach under a "see you in court" approach is the *sine qua non* of bad faith. *Seaman's Direct Buying Services v. Standard Oil*, 36 Cal.3d 752, 762, 206 Cal.Rptr 354, 686 P.2d 1158 (1984).

with the overall expenditures by plaintiff in this matter.

Accordingly, pursuant to the terms of the contract, and based on this court's findings of exceptional circumstances of bad faith, plaintiff is awarded attorney's fees and costs. The amount of $2,000 previously awarded by this court as a monetary sanction under Rule 11 shall be set-off against the amount of fees ultimately awarded in favor or plaintiff. Plaintiff shall submit within twenty (20) days appropriate declarations which shall set forth applicable time sheet information as well as address the so-called *Kerr* factors so that this court may determine the amount of a reasonable fee.[6] This order awards fees and costs to the present time only. No determination is made with respect to the fees and costs that may arise in connection with the alter-ego and punitive damage claims still to be resolved.

## Conclusion

Based on the above findings and conclusions, the court orders that plaintiff be awarded judgment in its favor against the four remaining named defendants as follows:

### I. Soracco Sheet Metal

1. Lost wages in the amount of $31,358.58 (Master's Report PP. 34–38 and Platten Declaration of March 23, 1987);

2. Lost fringe benefits in the amount of $17,773.61 (Master's Report P. 39);

3. Lost dues in the amount of $2,327 (Master's Report P. 46 and Platten Declaration of March 23, 1987);

4. Liquidated damages in the amount of $2,258.41 (Master's Report P. 39);

5. Pre–Judgment interest on the total of the above amount at the rate of 7% until June 30, 1983 and 10% thereafter; and

6. Post–Judgment interest at the current T–Bill rate of 6.9%.

6. *See Kerr v. Screen Extras Guild,* 526 F.2d 67

### II. Horrell & Sons, Inc.

1. Lost wages in the amount of $49,692.84 (Master's Report PP. 47–54 and Platten Declaration of March 23, 1987);

2. Lost fringe benefits in the amount of $42,700.48 (Master's Report P. 55);

3. Lost dues in the amount of $3,485.25 (Master's Report P. 63 and Platten Declaration of March 23, 1987);

4. Liquidated damages in the amount of $4,477.08 (Master's Report P. 55);

5. Pre–Judgment interest on the total of the above amounts at the rate of 7% until June 30, 1983 and 10% thereafter; and

6. Post–Judgment interest at the current T–Bill rate of 6.9%.

### III. Placer Heating & Air Conditioning

1. Lost wages in the amount of $95,661.35 (Master's Report PP. 64–74 and Platten Declaration of March 23, 1987);

2. Lost fringe benefits in the amount of $50,596.64 (Master's Report P. 75);

3. Lost dues in the amount of $2,795.00 (Master's Report P. 83 and Platten Declaration of March 23, 1987);

4. Liquidated damages in the amount of $5,566.24 (Master's Report P. 75);

5. Pre–Judgment interest on the total of the above amounts at the rate of 7% until June 30, 1983 and 10% thereafter; and

6. Post–Judgment interest at the current T–Bill rate of 6.9%.

### IV. Ring Heating, Inc.

1. Lost wages in the amount of $52,962.71 (Master's Report PP. 84–91 and Platten Declaration);

2. Lost fringe benefits in the amount of $54,959.80 (Master's Report P. 92 and Platten Declaration);

3. Lost dues in the amount of $2,795 (Master's Report P. 101 and Platten Declaration);

(9th Cir.1975) and Local Rule 293(b) and (c).

4. Liquidated damages in the amount of $5,566.24 (Master's Report P. 92 and Platten Declaration);

5. Pre–Judgment interest on the total of the above amounts at the rate of 7% until June 30, 1983 and 10% thereafter; and

6. Post–Judgment interest at the current T–Bill rate of 6.9%.

Plaintiff shall prepare and submit within ten (10) days, a summary order for the entry of judgment of the above award pursuant to Rule 54(b), Fed.R.Civ.P. The order shall include the computation of the accrued interest to date and a sum certain for the total amount of the judgment as to each defendant.

The court will set a status conference by separate order for the purposes of scheduling the balance of this action.

IT IS SO ORDERED.